## LIBERTY STATE BANK v. AMERICAN SURETY COMPANY OF NEW YORK AND ANOTHER.[1]

January 15, 1926.

No. 24,873.

**Evidence insufficient to support verdicts that plaintiff's assistant cashier defrauded it.**

The verdicts finding that defendant Graden had defrauded plaintiff by means of certain cashier's checks and by means of an exchange of certain promissory notes are not sustained by the evidence.

Fidelity Insurance, 25 C. J. p. 1115 n. 33.

Two actions in the district court for Hennepin county, one to recover loss occasioned by manipulation of cashier's checks and the other a loss occasioned by manipulation of certain promissory notes. The cases were consolidated and tried before Buffington, J., and a jury which returned verdicts for plaintiff. Defendants appealed from an order, Bardwell, J., denying their motions for judgment notwithstanding the verdicts or for a new trial. Reversed.

*Fowler, Carlson, Furber & Johnson,* and *McMeekin, Quinn & Swan,* for appellants.

*Elliott, Doll & Coursolle,* for respondent.

TAYLOR, C.

Plaintiff is a state bank organized in 1917 with a capital of $25,000 and located in the city of St. Paul. Its business was managed and conducted by J. D. Barr, its cashier, and N. J. Graden, its assistant cashier and bookkeeper, from its organization until they resigned

[1]Reported in 206 N. W. 706.

by request—Barr on August 12, 1921, and Graden on December 15, 1921. Plaintiff procured a bond from the American Surety Company by which that company bound itself to reimburse plaintiff for any pecuniary loss sustained through the fraud or dishonesty of these officers. The tellers and other employes during this period testified as witnesses, but are not involved in the transactions in controversy. After his discharge, Barr removed to California. Plaintiff claimed that he was a defaulter and plaintiff's representatives went to California and made a settlement with him, the details of which are not disclosed.

In 1923 plaintiff brought two actions against Graden and the surety company—one on the claim that Graden had defrauded plaintiff out of the sum of $2,349.36 by means of certain cashier's checks issued by himself as assistant cashier to himself, and the other on the claim that he had defrauded plaintiff out of the sum of $2,000 by means of certain notes executed by one Heffron. The actions were consolidated, tried together and resulted in verdicts for plaintiff. Defendants appealed from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial in each action.

The actions are designated in the record as the cashier's checks case, and the Heffron notes case. We will consider first the cashier's checks case. The complaint sets forth 8 cashier's checks issued by Graden as assistant cashier to himself and alleges that he had fraudulently taken the amount of these checks from the money of the bank and appropriated it to his own use. At the trial, this claim was abandoned as to 3 of these checks and they were eliminated from the case, leaving for consideration the 5 checks marked respectively as Exhibits A, B, C, D and E.

### Cashier's Check Case.

The checks marked as Exhibits B, C and D were issued in June, 1919, by Graden as assistant cashier to himself as assistant cashier and bore the notation "long cash." The bank counted its cash and balanced its books every night, and the cash on hand was sometimes

found to be either "long" or "short"—"long" if more than the books called for, "short" if less. If the bank received money for which the proper entry was not made in the books, the cash would be "long"; if it paid out money for which the proper entry was not made, the cash would be "short." For a time "long cash" was entered on the teller's cash book until the error was discovered and corrected. Graden testified that he carried it in that way until Barr directed him to issue cashier's checks to himself for such items for the purpose of balancing the books, the checks to be held until the error was discovered. He testified that the 3 checks in question were issued at Barr's direction to cover "long-cash" and remained in the till until the errors were discovered, when the proper entries were made upon the books and the checks stamped paid. That "long cash" was carried in this manner a part of the time appears without dispute from the testimony of other employes.

The check marked as Exhibit A was issued by Graden as assistant cashier to himself as assistant cashier on May 15, 1919, and was paid on May 21, 1919. Graden testified that the money represented by this check was handed to him by a customer named Brant for safe keeping; that Brant said he was holding it in connection with a deal about to be closed and did not wish to mix it with his own funds; that he, Graden, deposited the money in the bank and issued the check for the amount; and that when Brant called for the money it was returned to him and the check stamped paid.

The check marked as Exhibit E was issued by Graden as assistant cashier to himself personally on October 7, 1919, and was paid on December 5, 1919. This was the only one of the 5 checks which was payable to Graden personally and not as assistant cashier. Graden testified that, while living at Farmington, he had made a loan of his own funds to a farmer named Klaus; that Klaus repaid the loan; and that he, Graden, deposited the money in the bank taking this check for the amount and held it until he reinvested the money.

Graden was a defendant charged with having issued these checks for the purpose of defrauding the plaintiff, and the jury may have rejected his testimony in respect to them, although it stands uncon-

tradicted. The only other evidence in the case relating to the issuance or payment of these checks is the books and records of the bank. These books show that the proper record of the issuance of each check was made on the date on which it was issued, and that the proper record of its payment was made on the date on which it was paid. It is undisputed that the books balanced on these dates showing that when the checks were issued the money represented by them had been received and accounted for, and that when they were paid proper and correct entries of the disbursement had been made. The checks themselves were filed in the proper place among the paid cashier's checks. Plaintiff had an expert auditor make a full examination and investigation of its books and business affairs, and he was plaintiff's chief witness at the trial. He made no claim that he had found anything to indicate that the books or records had been falsified or manipulated in any way, or that they did not correctly record the transactions entered therein. We have carefully searched the lengthy record and have not found even a scintilla of evidence tending to show that the money represented by these checks was not actually in the bank when they were issued or that the bank ever lost anything whatever by, through or on account of them. The books show that the money for which they were issued had been received and properly accounted for and there is no evidence to the contrary. No claim has been made to any of this money by other parties, and there is nothing to contradict or impugn the records of its disbursement. The burden was on plaintiff to prove that it had sustained a loss, and in the absence of any evidence tending to show a loss the verdict cannot stand.

### Heffron Notes Case.

In the Heffron notes case, it appears that in 1920 a customer of the bank named Wroge had indorsed and discounted at the bank certain promissory notes executed to him by one Holton and secured by a chattel mortgage upon a Cole automobile; that the Cole automobile had been seized and confiscated by the Canadian authorities on the charge that Holton was using it for the transportation of

liquor in violation of the Canadian laws; that in April, 1921, Wroge, learning that Holton had a Cadillac automobile in a public garage in the city of St. Paul, garnished the garage keeper; that at the instance of Wroge and by direction of Barr, Alvin S. Pearson, the attorney for the bank, went with Wroge to Holton for the purpose of obtaining a mortgage on the Cadillac automobile; that they made an arrangement by which the garnishment was released, and the title to the automobile was transferred to and registered in the name of Florence C. Heffron, an associate of Holton, and she executed new notes for Holton's debt and a chattel mortgage upon the automobile as security for their payment. These notes and the chattel mortgage were made to Graden. They were subsequently placed in the bank by Barr, and the Holton notes, indorsed by Wroge, were surrendered. Shortly thereafter Graden indorsed the notes without recourse and assigned the chattel mortgage. Holton seems to have resumed his "bootlegging" operations. He was arrested in the state of North Dakota for transporting liquor, and the Cadillac automobile was seized and confiscated by that state. The notes and mortgage are still held by the bank, but the security has been lost through the confiscation of the automobile and the notes are said to be worthless. Plaintiff claims that the Holton notes were collectible from the indorser Wroge, and that they were surrendered for the uncollectible Heffron notes for the purpose of defrauding the bank.

Whether that transaction gave plaintiff a cause of action against anyone it is not necessary to determine, for the evidence fails to show that Graden had any part in it. Plaintiff proved the matters in respect to the taking of the Heffron notes and mortgage by Pearson, the attorney who conducted the transaction on plaintiff's behalf. Pearson testified to the effect that he acted at the direction and under the instructions of Barr, and prepared the papers in accordance with a memorandum furnished him by Barr; and also testified that he had had no talk with Graden in reference to the matter. The defendants endeavored to have Pearson disclose the instructions given him by Barr, but plaintiff objected on the ground

that they were privileged communications between attorney and client, and the court excluded them and also all conversations between Pearson and Barr. It is apparent, however, that the notes and mortgages were taken in Graden's name by Barr's direction, and there is nothing in the record to show that Graden had anything to do with the transaction, or had any knowledge of it, or had any interest in it or derived any benefit from it. He testified that the first he knew of it was when he saw the notes in the bank, and that he immediately indorsed them without recourse as he did not want them standing in his name.

Plaintiff would have us infer that Barr and Graden had entered into a conspiracy to defraud plaintiff by means of this exchange of notes, but we find no evidence which will justify such an inference. The only thing in the record connecting Graden with the transaction in any way is the bare fact that the Heffron notes and mortgage were taken in his name, and all the testimony bearing upon the question points to the conclusion that they were so taken without his knowledge. It clearly appears that he was not present at and had no actual part in the transaction in which they were taken, and there is no evidence that he had anything to do with the surrender of the Holton notes or even knew of it. The finding that he had a culpable part in this transaction is wholly without evidence to support it.

The orders appealed from are reversed and judgment will be entered for defendants in each case.