# FARMERS CO-OPERATIVE STORE OF CLEVELAND, MINNESOTA, v. THOMAS J. LLOYD AND ANOTHER.[1]

June 7, 1935.

No. 30,303.

[1]Reported in 261 N. W. 191.

*Albert R. Allen,* for appellant.

*George T. Olsen,* for respondent Thomas J. Lloyd.

*Sexton, Mordaunt, Kennedy & Carroll,* for respondent Hartford Accident & Indemnity Company.

HOLT, JUSTICE.

Plaintiff appeals from the order denying its motion for a new trial.

The complaint alleges that plaintiff, a domestic corporation, has conducted a general store and implement business at Cleveland, Minnesota, since 1924, and that defendant Lloyd was its manager during that time until May 18, 1932, having charge of its business, money, property, and accounts; that defendant Hartford Accident & Indemnity Company gave a bond to indemnify plaintiff against loss through larceny or embezzlement of Lloyd while such manager; and that between January 1, 1931, and May 1, 1932, while said bond was in effect, Lloyd fraudulently and unlawfully converted and appropriated to his own use $3,919.05 of plaintiff's money that had come into his possession as manager of said store and business, for which sum judgment is asked. All conversion and misappropriation was denied. The referee appointed to hear and determine the case filed findings and conclusions of law directing judgment that plaintiff have no relief and that defendants recover costs. The referee denied plaintiff's several motions for amendments of the findings. Thereupon plaintiff moved the district court for a new trial, assigning the same 59 errors assigned on this appeal.

A reading of the record in this case is convincing that suspicion of wrongdoing on the part of Lloyd arose from the manner of keeping record of the transactions between plaintiff and the International Harvester Company, a manufacturer and dealer in farm implements. When sales of such implements were made on credit plaintiff accepted in payment the promissory notes of the purchasers, payable to the order of the harvester company, and turned such notes over to that company as collateral to plaintiff's account with the company. Payments received on such notes would be applied on the account due from plaintiff to the harvester company.

There seems to have been a poor or loose method of keeping track of these notes. The inference is that the harvester company reported, when requested, the unpaid amounts upon the notes so held by it as collateral to plaintiff's indebtedness to it.

An attentive reading of the testimony and an examination of the exhibits referred to in such testimony, insofar as it is possible for a reviewing court to do when an entry in a voluminous exhibit is indicated to the person testifying by merely pointing thereto with the finger, is convincing that the court below had no evidence upon which it could base a finding that during the time alleged in the complaint the defendant Lloyd converted or misappropriated to his own use any money or property belonging to plaintiff. It may be conceded that the method of plaintiff's bookkeeping was faulty and that it is difficult and perhaps impossible to trace every item of its deals. But the system of keeping accounts was approved by plaintiff. It is true, its board of directors were not experienced business men or expert bookkeepers. Nor was Lloyd. In respect to the harvester company's deals, the finding is:

"That the plaintiff corporation also sold machinery as agent for the International Harvester Company and charged the purchase price of said machinery against the purchasers' accounts on their records, and periodically the plaintiff obtained promissory notes from the purchasers covering these sales, and said notes were payable to the International Harvester Company, which notes were turned over to the International Harvester Company to apply on the open and note accounts between the plaintiff and the said International Harvester Company, but that the plaintiff failed and neglected to credit to the customers' and purchasers' accounts many of these notes, and as the result thereof annually there was an adjustment made by the said plaintiff's auditor, A. F. Burmeister, to properly balance the books of the said plaintiff corporation."

This finding is challenged as to the concluding portion; but it is well sustained. Indeed, the evidence is undisputed that when the annual audit was made the harvester company furnished the auditor with a statement of the notes it held as collateral to plaintiff's

account and the amounts unpaid thereon. The evidence also shows that in the audit for the year 1928 there was an adjustment made based on such notes in the hands of the harvester company in the amount of $5,003.86, which was deducted from the bills receivable account. Over defendants' objection, counsel devoted much time and energy to establish his cause of action from this item, but without success. For this finding, which virtually is decisive of the lawsuit, was made:

"That the evidence and proof submitted in this case fail to prove by the fair preponderance of the evidence that the plaintiff sustained any loss of money or property due to any acts on the part of the defendant Thomas J. Lloyd, constituting larceny or embezzlement, or otherwise."

This finding accords with our conclusion, as first above stated. We therefore think the decision of the court below should stand unless testimony was erroneously excluded which would tend to support a recovery. There is no evidence justifying the attack on the finding that Burmeister was employed by plaintiff, and there is no foundation for the assertion that Burmeister colluded with Lloyd to defraud plaintiff.

On cross-examination of Lloyd it was developed that one Pettis in 1928 bought a tractor of plaintiff, and then an objection was sustained to this question:

"Mr. Lloyd, isn't it true Mr. Pettis didn't give you a note of $793 at all?" Thereupon this offer of proof was made and rejected: "I am offering to prove that Mr. Pettis bought the tractor at one time and he gave no note; that it was charged in the book exhibit 3, it was charged to accounts receivable, and no note was ever given and that Mr. Lloyd sold that note to Ponwith, a forged note of that amount and that Mr. Pettis never saw it and never signed it, and that five days later, on the 11th day of or the 24th day of November of the same year he received from Mr. Pettis for that [forged] note the sum of $793.16; that then he entered that on the books in payment of his own salary, $266, and the balance a cash item, credit to cash on that day of $527, which Mr. Pettis

did not pay on that day. That is my offer, your Honor, to show the dishonesty of this man, characterizing the way he carried on our business."

The offer related to a transaction occurring more than three years before the time that any conversion or wrongful appropriation involved in this action took place. The offer was in fact to prove that Lloyd was a thief or a crook, and not to prove that he wrongfully took any particular amount of plaintiff's money or property during the time he is charged with doing so in the complaint. A plaintiff in an action for embezzlement may not rest his cause of action upon proof of the bad character of the defendant.

Numerous assignments of error relate to rulings sustaining objections to questions asked by plaintiff's counsel, where, after reframing the questions to meet the objections or by laying further foundation, the answers sought eventually were received. In all such cases the first ruling, even though technically erroneous, cannot be regarded as prejudicial in a court trial. We have been unable to discover any ruling excluding testimony offered by plaintiff which might have changed the result of the trial or which was erroneous.

Plaintiff insists that the burden was on Lloyd to prove that he accounted for all the property that came under his control as manager. This is not an action in accounting for specific property intrusted to defendant to be returned to plaintiff or accounted for. It is an action charging defendant Lloyd with having wrongfully appropriated to his own use money and property of plaintiff, for which misappropriation plaintiff seeks to hold defendants liable on the fidelity bond pleaded, defendant Lloyd as principal and the other defendant as his surety. We conceive that in such an action the burden of proof must rest on plaintiff. Lahr v. Kraemer, 91 Minn. 26, 97 N. W. 418, so holds, though plaintiff cites the case as holding the contrary. Insofar as proving a right to recover against the defendant company, the burden was upon plaintiff to prove that it had sustained a loss covered by the bond. Liberty State Bank v. American Surety Co. 165 Minn. 462, 206 N. W. 706. In a suit on

practically a similar bond the court held that, as against the company issuing the bond indemnifying the employer against loss through the larceny or embezzlement of the employe, the burden was on the plaintiff to show that the employe corruptly took or appropriated the property. Monongahela Coal Co. v. Fidelity & D. Co. (C. C. A.) 94 F. 732, 736. The court there stated:

"It follows, therefore, that the fact that the account between the employer and the employe shows an indebtedness from the latter to the former is not sufficient of itself to support a claim on the bond against the company. * * * Under the circumstances, the fact that the employe, on settlement, is found to owe the employer, is not sufficient to show that the debt originated in fraud or dishonesty, in embezzlement or larceny."

The same is the conclusion in U. S. F. & G. Co. v. Bank of Batesville, 87 Ark. 348, 112 S. W. 957. But we need not consider what the proof must show to authorize a recovery against the defendant company, for, as we view the evidence, it does not warrant a finding that Lloyd is indebted to plaintiff on account of any wrongful appropriation of its funds or property or on account of any loss sustained through his negligence in the performance of his duties as manager. This is said with due consideration of exhibit 54-A and the disputed conversations with or in the presence of Lloyd and some of plaintiff's directors in a church basement about the time his services ended. Even if the court accepted the testimony adduced by plaintiff as to these matters, it was insufficient upon which to ground a recovery against Lloyd.

The order is affirmed.