# RAYMOND FARMERS ELEVATOR COMPANY v. AMERICAN SURETY COMPANY OF NEW YORK AND OTHERS.[1]

February 9, 1940.

No. 32,181.

[1]Reported in 290 N. W. 231.

*Fowler, Youngquist, Furber, Taney & Johnson,* for appellant American Surety Company.

*George L. Barnard,* for appellant Clarence L. Gunter.

*Daniel F. Foley,* for respondent.

HILTON, JUSTICE.

Defendants made a motion for amended findings of fact and conclusions of law or for a new trial. The motion was denied. The appeal is from that portion of the order denying the motion for a new trial.

Plaintiff, Raymond Farmers Elevator Company, made an assignment of its alleged cause of action to its creditor, Becher-Barrett-Lockerby Company, who appears to be the real litigant. Plaintiff was engaged in the business of selling, purchasing, and storing of grain and certain other incidental commodities. At Raymond, this state, it owned and maintained an elevator. Defendant Gunter, without much previous experience, was made manager of the elevator on January 6, 1936, at a salary of $85 per month. About April 2, 1937, his employment ceased. As manager, he had the usual powers of one in his position.

Defendant American Surety Company on February 1, 1936, issued a fidelity bond to plaintiff in the sum of $2,000. By it, plaintiff was to be reimbursed for losses from the fraud and dishonesty of its employes within the dates specified. By the contract, failure by the employe to account when demanded and proof thereof constituted *prima facie* evidence of liability. But the surety was not obligated to pay until the employer established that "some portion of such liability is attributable to the fraudulent or dishonest conduct of the Employe concerned." Another clause permitted the surety to deduct "such other portion as it may prove is not attributable to the fraud or dishonesty of the Employe."

On January 28, 1937, another bond, similar to the first, was issued.

Plaintiff charges that Gunter took money, converted flour and grain, and used his position to promote his financial interests.

Midway in the trial the lower court concluded that the action was properly triable by the court and discharged the jury which had heard the case to that point. Error is assigned. As we understand the complaint, in which both the principal and the surety are joined as defendants, against the former an accounting is sought and a money judgment based thereon. Such an action being of equitable cognizance, Gunter did not have a right to a jury trial. This is well established. Shipley v. Bolduc, 93 Minn. 414, 101 N. W. 952. The action, as against Gunter, being equitable in substance and nature, the trial court could withdraw the case from the jury at the point it did and discharge that body. This is the logical result of the rationale of Morgan v. City of Albert Lea, 129 Minn. 59, 151 N. W. 532. The remaining question is whether there was error as to the surety.

While otherwise complete in itself, the contract of suretyship is actually accessory to that between the principal, and, here, the employer. 21 R. C. L. p. 946, § 2. A suit against a surety on the contract is an action for the recovery of money based upon the promise to pay. Therefore it is triable by jury. 2 Mason Minn. St. 1927, § 9288; see Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302 (action on an administratrix' bond). The tripartite situation qualifies the extent of the triable issues so far as the surety is concerned. If liability of the principal is established, whether before court or jury or in the same or separate actions, the only question in determining the surety's liability is whether the acts for which the principal is liable are within the provisions of the bond. If so, the surety stands as to the merits in the same shoes as the principal. Whether the surety is sued after judgment has been procured against the principal as in State Bank of New Prague v. American Surety Co. 206 Minn. 137, 288 N. W. 7 (surety had notice and opportunity to defend) or is sued in the same action as the principal, determination is conclusive against the surety if the issues are the same. The result is identical although the basis perhaps is different. A directed verdict against the surety must follow if the acts of the principal are covered by

the bond. The findings below, so far as now sustained, resolve Gunter's liability. The bond, by its terms, renders the surety liable for defaults of this character. Consequently matters should stand as they now are.

It is true the bond contains a provision permitting the surety to escape liability for all loss which it can show is not caused by fraud. Both litigants state these are "one act" bonds which shift the burden of proof. By contract, the surety and employer can determine upon whom the burden shall rest, but as between employer and employe the burden of proof is one imposed by law. The suretyship contract does not operate on it. In the situation at bar, the provision mentioned cannot apply effectively. If the employer is regarded as having the burden of proof to establish fraud, a finding against the principal means that the burden has been sustained. How, then, could the surety on the same evidence establish the contrary? If the burden is regarded on the agent to justify, it is a burden identical with that in the contract, and if the agent cannot sustain it, neither can his surety. So far as the findings are now sustained, they determine the liability and preclude the surety.

As found by the lower court, the shortages embraced the following:

1. Keller item   $   9.35
2. Flour item     47.45
3. Grain items   1,299.29
4. Trucking items   189.81

As to items 1 and 2, the findings are of wilful conversion by Gunter. They rest upon adequate supporting evidence. The question is a simple one of fact, and there is no need for relating the evidence, which has been examined and found to justify the conclusion below.

The shortage claimed to exist in the grain account is the most difficult problem presented. The trial court concluded, after allowing one per cent for shrinkage, that this commodity was short as follows:

| | | | |
|---|---|---|---|
| 1. | Wheat | 28 bu. and 48 lbs. | |
| 2. | Barley | 749 bu. | |
| 3. | Flax | 50 bu. and 45 lbs. | |
| 4. | Corn | 541 bu. | |

|  |  |
|---|---|
| Total | 1,368 bu. and 93 lbs. |

It was found by the trial court that Gunter "wrongfully appropriated the same to his own use at a time when he was in possession thereof." This finding is assailed. For reasons to be stated, it cannot stand.

Plaintiff sought to establish that some 1,368 bushels more of grain were received by Gunter than he could account for. On the other hand, Gunter insists that he never received the grain for which he is charged with shortage. The defense called as a witness Mr. C. J. Hoel, an inspector for the state railroad and warehouse commission assigned to the weights and measures division. He testified that he visited the elevator on May 18, 1937, for the purpose of inspecting the scales used there. He tested a light motor truck scale on the outside and a dump scale in the elevator. Mr. Bruns, president of the plaintiff, was present during the inspection. There was also an automatic scale on the side track. Hoel did not test this because the "state of Minnesota does not recognize an automatic scale."

The truck scale had a capacity of 24,000 pounds. On a 1500-pound test, it weighed heavy by 13 pounds. An examination proved the physical condition was not acceptable. Hoel placed a rejection sign on it and thereby put it out of commercial use. The second scale had a capacity of 12,000 pounds. On a 1500-pound test it indicated a weight of 1,510, or an error of ten pounds. Hoel testified:

"The general condition was very poor. * * * the scale was rejected and put out of commercial usage. On my notation for repairs no doubt the scale would have to be removed and completely rebuilt to weigh accurately."

The witness testified that he did not know whether the errors would multiply truly or not. The scales might weigh correctly on some occasions or heavier or lighter than the actual weight of the object. It was his opinion that the condition of the scales had existed for some time. Mr. Bruns testified that practically all of the grain that came into the elevator was weighed on either one or the other of the two scales tested, and a good portion of the grain loaded out was weighed on either the automatic scale or one of the other two. Enlightening is the fact that when Gunter was made manager and also in the spring of 1937, the grain was weighed on the automatic scale. According to the records, the following is supposed to represent the—

|  | Grain Received | | | Grain Shipped Out | |
|---|---|---|---|---|---|
|  | (While Gunter was manager) | | | | |
| (1) Wheat | 5,472 | bu. | : | 5,298 | bu. |
| (2) Flax | 8,095 | " | : | 7,963 | " |
| (3) Barley | 37,754 | " | : | 36,627 | " |
| (4) Corn | 35,908 | " | : | 35,007 | " |
|  |  |  | : |  |  |
| Total | 87,229 | " | : | 84,895 | " |

The foregoing suggests that the burden of proof has a definite bearing on the question presented. The rule is that the principal (used in the agency sense) must establish by a fair preponderance of the evidence that the agent has actually received the particular thing for which he is sought to be held. Farmers' Warehouse Assn. v. Montgomery, 92 Minn. 194, 99 N. W. 776; 1 Mechem, Agency (2 ed.) § 1344; Lahr v. Kraemer, 91 Minn. 26, 97 N. W. 418; see also for an analogous principle, Farmers Co-op. Store v. Lloyd, 194 Minn. 569, 261 N. W. 191. The crux of the action is to compel Gunter to respond for the value of grain which it is claimed he received and used wrongfully. A misappropriation is a theoretical impossibility until it is established that there is something to account for, i. e., that grain was actually received. Hoel's testimony throughout showed that he was familiar with the type of equipment tested. There is no contradictory evidence in the record. The inspection was made in the course of his

duties. His testimony cannot be overlooked arbitrarily. The condition of the scales, even though they did not err on every occasion, and perhaps often weighed light, is sufficient to cast serious doubt upon the validity of plaintiff's claim that Gunter received more grain than he can account for. Interesting is the fact that there is not much serious dispute that Gunter had 14,000 pounds of screenings on hand. Plaintiff, however, argues that these could have been purchased elsewhere. Another factor of relevancy is the amount allowed for shrinkage. While the general trend of the evidence is that a greater amount than one per cent should have been allowed, the evidence is not satisfactory enough to justify setting aside the finding below which probably is inadequate as a practical matter.

Plaintiff relies upon several surrounding transactions to color the shortage in grain disfavorably. For instance, scale ticket #1204 shows that 71 bushels, 28 pounds of corn were sold for $76.50. The sales book is marked accordingly. Actually the ticket should have been for 171 bushels, 28 pounds. The price also would be greater. On the ticket, the weight of the corn indicated is that of 171 bushels, 28 pounds rather than of 71 bushels. This factor detracts considerably from the value of the item for the purpose it is sought to be used. Of course Gunter must account for the 100 bushels, but we do not think reliance upon this item to charge Gunter for the 1,368 bushels of grain would be justified.

As to the Asche matter, we cannot find any fraud. Gunter exceeded his authority by issuing the check upon the promise of delivery of 200 pounds of grain the following week. But he purported to act for and in behalf of the elevator. No personal gain was shown. As to the Swenson matter, the lower court struck the testimony, and therefore it is not before us.

It is also claimed that Gunter acted improperly in engaging in the buying and selling of grain in partnership with Morrow. Evidence as to this presented a fact question. The testimony is not of such a character as will permit us to conclude that 1,368 bushels of grain were converted. Absent the defective scales, the

related transactions undoubtedly would have a greater bearing on the question. On all the evidence, much of which cannot be here related, we do not think plaintiff has sustained the burden of proof. Interesting is the resolution passed by the elevator board of directors to the effect that Gunter should not be dismissed because they did not believe he had committed any fraud. This admission is contrary to the contention now advanced.

It may be that plaintiff can produce more satisfactory evidence on this point. The case presents a close question. What we have said must not be regarded as prejudicial should plaintiff by more satisfactory proof seek to establish what it has here failed to show.

The final item charged was $189.81. This liability is premised on the breach of the duty of loyalty. The trial court concluded that Gunter had defrauded his employer in certain transactions involving the trucking of grain. Shortly after Gunter became manager he entered into an arrangement with Colman and Morrow whereby grain was purchased from the elevator and trucked in a vehicle owned by Gunter to other points for sale. Gunter set the purchase price, which, in each instance, appears to be equivalent to that which he could obtain from other truckers in the community. While Gunter had authority to sell to truckers, clearly it did not comprehend purchases for himself. The expenses as well as the profits were divided on a 60-40 basis. It is contended that the $189.81 represents the gross and not the net profit and also that Gunter's activity was not in competition with his principal since the elevator did not haul grain and sell it elsewhere.

Clearly an agent cannot deal with his principal as an adverse party in a transaction connected with the agency whether damage results or not. Restatement, Agency, § 389, comments "a" and "c." Also, 1 Mechem, Agency (2 ed.) § 1189; *Id.* § 1199. Under the facts presented, we do not regard it as vital that the principal did not engage in trucking grain to sell. The finding below had sufficient evidence to support it. Therefore the only

remaining question is whether the agent is liable for the gross or the net profit. Some of the sales of the grain were made at a loss, others at a profit. But the fact which defendant Gunter relies upon is that the expense of operating the truck destroyed any net profit. The position of the Restatement, Agency, § 403, comment "c," appears to be that the agent is responsible for the gross profit and cannot deduct expenditures incurred in making an improper profit. Apparently the basis is that the penalty for wrongful dealing is forfeiture of the agent's own investment. This rule is sound. There are perhaps situations where it should be tempered by the circumstances, but the instant case does not come within that category. The evidence justified the finding made below. The rule must operate here.

The assignments of error based on the refusal of the lower court to permit Gunter to testify as to his good faith and intentions in entering into the trucking transactions need not be passed upon. The testimony was in detail and covered the entire affair. From it the trial court could conclude fairly and justly despite the exclusion of the question.

Other assignments have been considered and are not considered meritorious.

As to the Keller, flour, and trucking items, amounting in the aggregate to $246.61, the order is affirmed; as to the grain item, the order is reversed and a new trial is ordered.

Order reversed in part and affirmed in part.

STONE, JUSTICE (concurring).

I concur in the result.

MR. JUSTICE LORING took no part in the consideration or decision of this case.