# VILLAGE OF PLUMMER v. ANCHOR CASUALTY COMPANY AND ANOTHER.[1]

November 27, 1953.

No. 36,012.

[1]Reported in 61 N. W. (2d) 225.

*Hall, Smith & Hedlund,* for appellant.
*Daniel F. Foley,* for respondent Anchor Casualty Company.
*Grannis & Grannis,* for respondent Harlan Bailey.

MATSON, JUSTICE.

Plaintiff appeals from an order denying its motion to set aside a directed verdict or for a new trial in an action on an indemnity bond in which a verdict was directed for both defendants.

Although the cause is one for recovery on a blanket fidelity bond contract entered into by the village of Plummer with the defendant Anchor Casualty Company whereby the plaintiff village was indemnified against any loss of money or property from its municipal liquor store by the dishonesty[2] of any one or more of its employees, the action was pleaded and tried on the sole theory that the loss occurred only through the dishonest acts of the defendant Harlan Bailey who was employed by the village as the manager of its liquor store from about April 5, 1949, until November 7, 1949.

We are concerned with the issues of the burden of proof and whether the evidence presented a jury question.

In an action on a fidelity bond executed to indemnify an employer against loss caused by the dishonesty or fraud of an employee the burden of proof is on the plaintiff-employer[3] to establish by a reasonable preponderance of the evidence[4] the loss and that such loss was caused by an act of dishonesty or fraud of an em-

---

[2]Whether the loss was caused by larceny, theft, embezzlement, forgery, misappropriation, wrongful misapplication, or other fraudulent or dishonest acts.

[3]Farmers Co-operative Store v. Lloyd, 194 Minn. 569, 261 N. W. 191; see, Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739; 50 Am. Jur., Suretyship, § 357.

[4]Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 290 N. W. 231, 126 A. L. R. 1351; Farmers Produce Co. v. Aetna Cas. & Surety Co. 238 Mich. 405, 213 N. W. 685; Salley v. Globe Ind. Co. 133 S. C. 342, 131 S. E. 616, 43 A. L. R. 971; 50 Am. Jur., Suretyship, § 361; Annotations, 43 A. L. R. 977, 46 A. L. R. 976, 62 A. L. R. 412, 77 A. L. R. 861, and 98 A. L. R. 1265.

ployee within the terms of the fidelity bond and during the time alleged in the complaint. Dishonesty and any other fraudulent or wrongful acts covered by a fidelity bond are not established by a mere proof of the employee's mistakes or negligence.[5]

■ A motion for a directed verdict accepts the view of the entire evidence most favorable to the adverse party and should be granted only in unequivocal cases where in the light of the evidence as a whole it would be the duty of a trial court to set aside a contrary verdict as being manifestly against the entire evidence.[6] In the light of the nature of plaintiff's burden of proof and the evidence as a whole, the trial court did not err in directing a verdict for defendants. It is true that the evidence was adequate to sustain a finding that plaintiff had established a loss, discrepancy, or shortage, as it was called during the trial. An audit of the books disclosed that, between April 1949 and September 29, 1949, the gross profit was $5,624.04 less than it should have been. A similar audit from September 30 to November 7, 1949, showed a gross profit of only $1,443.98 when it normally should have been $2,888.95 for that period.

The difficulty arises in the failure to establish an evidentiary basis for a jury finding that some wrongful act or omission of the defendant Bailey caused the loss. Nowhere in the record was any direct evidence introduced showing that Bailey had misappropriated money or liquor. There was not even any evidence of suspicious circumstances such as sudden increased wealth or unusual activity on the part of Bailey. He was absent from the liquor store on occasions with liquor in his possession, but this was at the direction of the village council which told him to try and sell certain "off-brand"

[5] Fidelity & Cas. Co. v. Crays, 76 Minn. 450, 79 N. W. 531; Salley v. Globe Ind. Co. *supra;* Annotations, 43 A. L. R. 988, 46 A. L. R. 976, 62 A. L. R. 412, 77 A. L. R. 861, and 98 A. L. R. 1265; 50 Am. Jur., Suretyship, §§ 334 to 338.

[6] Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Osborn v. Will, 183 Minn. 205, 236 N. W. 197. For a discussion of this elementary rule, see Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637.

liquor to Legion Clubs at discounts if necessary. There is no evidence that he did not turn over all proceeds from sale of this "off-brand" liquor. At one time he sold $250 of liquor on credit, which it appears he was not authorized to do, but it was established that the money soon was paid in by the purchaser, and this episode raises no question as to the honesty of Bailey. The plaintiff contends that Bailey *might* have pocketed the invoices from the wholesalers and then converted the liquor represented by the invoices, but no evidence is presented to sustain this beyond the fact that Bailey was charged with the duty of giving the invoices to the bookkeeper, Mrs. Hubert Matt, and that it appeared that some invoices may have been missing.

On the other hand, the evidence makes it quite clear that the liquor store operation was not set up properly by the village and was run in a negligent manner. Bailey presumably was to have control of the store, but the evidence shows that *many others had access to the money and liquor within the store.* While Bailey was out on the road selling the "off-brand" liquor, others had charge of the store. It was also established that others had keys to the storeroom, used the cash registers, and knew the combination of the safe. From time to time "extras" would be hired to help out on busy nights. To what exactly those extras had access within the store is not clear, but it is evident that discipline was quite lax. The evidence further shows that the bookkeeping and inventory system was carelessly operated. The operation was so confusing that it is pure speculation whether the discrepancy or shortage resulted from a poorly kept inventory system, errors in bookkeeping, a loss of invoices, a loss due to sales of "off-brand" liquor below cost, or a direct loss of cash or liquor.

If there was an actual loss of cash money or liquor by wrongful misappropriation or by any other dishonest act, the evidence *taken as a whole* provides only a conjectural basis for an inference that such misappropriation or dishonest act was attributable to Bailey. With equal justification the evidence would sustain an inference of

wrongful conversion on the part of other individuals. With equally good justification the loss could be attributed to negligent operation and management. Under the circumstances, if the case had been submitted to the jury and the jury had found for the plaintiff, it would clearly have been the duty of the trial court to set the verdict aside. Where the entire evidence sustains with equal justification two or more inconsistent inferences so that one inference does not reasonably preponderate over the others, plaintiff has not sustained the burden of proof on the proposition which alone would entitle him to recover and it becomes the duty of the trial court to direct a verdict for the defendant because any verdict to the contrary would be based on pure speculation or conjecture.[7]

The order of the trial court is affirmed.

Affirmed.

[7]Huntley v. Wm. H. Ziegler Co. Inc. 219 Minn. 94, 17 N. W. (2d) 290; Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121; Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611; Standafer v. First Nat. Bank, 236 Minn. 123, 52 N. W. (2d) 718; Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771; 7 Dunnell, Dig. (3 ed.) § 3234.