THE BUCKEYE UNION CASUALTY CO., APPELLEE, *v.* BRADEN ET AL., APPELLANTS.

(No. 262—Decided May 10, 1962.)

*Messrs. Summers, Haupt & Theisen, Mr. J. Paul McNamara* and *Mr. Thomas D. Griffith,* for appellee.

*Messrs. Fogle & Fogle* and *Messrs. Knepper, White, Richards, Miller & Roberts,* for appellants.

RADCLIFF, J.  This cause was submitted on (a) motion by appellee to dismiss the appeal on questions of law; (b) motion by appellants to take additional testimony in their appeal on questions of law and fact; and (c) the merits.  In this writing we will dispose of only questions (a) and (b).

Since January 1, 1945, the effective date of the latest amendment to Section 6, Article IV of the Constitution of Ohio, grave doubt has existed in the minds of many members of the bench and bar that the Courts of Appeals of Ohio have jurisdiction in appeals on questions of law and fact, or that such form of appeal even exists.  The question has been too long ignored by both the Courts of Appeals of Ohio and the legal profession and we feel it our duty to raise it in this cause in such a manner that the Supreme Court of Ohio may pass directly upon it in all its aspects and ramifications.

There is no plausible excuse to include all the law applicable to this question in an opinion, as it is available in much clearer and more concise form than would result from my inept efforts in this opinion.  This proposition is best set forth in Skeel's Ohio Appellate Law, 1961 Cumulative Service, 88 *et seq.,* Section 200-1, and in an article by Judge Lee E. Skeel in 12 Western Reserve Law Review, at page 645.

As in all controversy there is another side to the coin, and all there is to be said therefor was well expressed by the late Judge James E. O'Connell, Court of Appeals of Ohio, First Appellate District.  This may be found in 14 Ohio Opinions (2d), 352.

In addition to the foregoing authority there is another factor supporting our position that we no longer have jurisdiction in appeals on questions of law and fact, and that is that

the original reason and need for such appeal no longer exist. This reason and need expired on October 9, 1883, with the amending of Section 6, Article IV of the Constitution (80 Ohio Laws, 382), at which time the Circuit Court was created to replace the District Court as the intermediate appellate court of this state. This abolished all possibility of appeal *coram nobis*. After that amendment date it was impossible for a judge to preside in an equity case on the trial level and then sit as one of three judges reviewing the same case on appeal. The danger of this possibility of appeal *coram nobis* (appeal to one's self) was the reason for creation of the distinction between appeal and error proceedings. The reason being so long dead, surely the rule, born of such reason, should be laid to rest after seventy-nine years of zombi existence.

We always regret adding to the labor of lawyers by raising an issue which, as we said earlier has been too long ignored and which they ignored, but it is certainly in this cause. In fact, this is a perfect situation in which to raise such a question as both the appellants and appellee herein are represented by very able and diligent members of our profession.

It follows from what we have said that the motion to dismiss the appeal on questions of law should be, and hereby is, overruled. The motion to take additional testimony is overruled and, *sua sponte,* we dismiss the appeal on questions of law and fact.

Nothing we have said herein applies to the merits of this cause. Parties whose interests are prejudiced or are aggrieved hereby, as defined in *Ohio Contract Carriers Association, Inc.,* v. *Public Utilities Commission,* 140 Ohio St., 160, may proceed as he or they deem best. This court will continue its work on the merits of this cause in the appeal on questions of law, the only matter now before us.

*Judgment accordingly.*

COLLIER and BROWN, JJ., concur.

(Decided June 20, 1962.)

ON MOTION to certify record.

RADCLIFF, P. J. This cause came on for hearing on appellant's motion to certify the record to the Supreme Court of

Ohio on the ground that the judgment of this court in dismissing the appeal on questions of law and fact herein is in conflict with judgments of other Courts of Appeals in other districts.

The motion is denied for two reasons:

1. Our order of dismissal of the appeal on questions of law and fact is not a final order from which an appeal may be taken. *Humphrys* v. *Putnam,* 172 Ohio St., 456. Before a conflict may exist there must be two final orders or judgments from each of which an appeal could be taken. *Humphrys* v. *Putnam, supra,* and *State* v. *Sheppard,* 97 Ohio App., 493, at page 497.

2. There would be no conflict between our order, if it were a final order, and the judgments of the other Courts of Appeals in the cases cited in appellant's motion, as the jurisdictional question was either not at issue or not decided.

*Motion denied.*

COLLIER and BROWN, JJ., concur.

(Decided November 1, 1962.)

ON MERITS.

RADCLIFF, P. J. Throughout this opinion we will refer to the appellee as Buckeye. The appellants will be identified as Braden, Janes, and Janes, Inc. This we do to avoid confusion. Janes, Inc., is an Ohio corporation engaged in general contracting during 1958 to 1960. Braden is an officer, director and the largest stockholder in Janes, Inc. Janes is an officer (president), director and stockholder in Janes, Inc. Buckeye is an Ohio corporation engaged in the surety and general insurance business.

In August 1958, Janes, Inc., was the successful bidder on Project 328 of the Highway Department of the state of Ohio. The project covered highway improvement in Monroe County. The bid price was $2,510,989.86, subject to change orders. Before the contract was awarded the state of Ohio required the statutory performance bond of Janes, Inc., in the sum of $1,524,400. Janes, Inc., applied to Buckeye for the bond. Buckeye examined the financial condition of Janes, Inc., and refused

to execute the bond. Buckeye would execute the bond if Janes, Inc., Braden, and Janes would, by separate agreement, give Buckeye additional protection. This was accomplished by the execution of the following agreement:

"WHEREAS, CLAUDE A. JANES, INC., BOX 127, Chesterhill, Ohio, (hereinafter called CONTRACTOR) desires to enter into a contract with the STATE OF OHIO, DEPARTMENT OF HIGHWAYS, for performance of State Highway Project No. 328, Monroe County, in the amount of $2,510,989.86 and CONTRACTOR is required by law to furnish bond with satisfactory surety in the sum of $1,524,400.00 upon the signing of said contract, and

"WHEREAS, CONTRACTOR has requested BUCKEYE UNION CASUALTY COMPANY, (hereinafter called BUCKEYE), of Columbus, Ohio, a surety satisfactory to the Department of Highways, State of Ohio, to execute said bond as surety, and CONTRACTOR'S principal stockholders, CLAUDE A. JANES, of Chesterhill, Ohio, and Robert J. Braden, of Marietta, Ohio have indicated to BUCKEYE their personal interest and desire to have BUCKEYE execute said bond, and

"WHEREAS, BUCKEYE is unwilling so to do, except upon certain conditions, stipulations and agreements.

"NOW, THEREFORE, FOR AND IN CONSIDERATION OF the premises aforesaid and in consideration of BUCKEYE agreeing to become and becoming Surety for CONTRACTOR on the aforesaid bond, and other good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged, CONTRACTOR, Claude A. Janes, and Robert J. Braden do hereby covenant and agree and do hereby affirm and reiterate their agreement with, to and for the benefit of BUCKEYE as follows:

"1. CONTRACTOR will execute such application or applications, indemnity or indemnities on such form or forms as required by BUCKEYE on account of its becoming surety on said bonds;

"2. CONTRACTOR will immediately establish a separate trust account with and in the Peoples Banking & Trust Co., Marietta, Ohio to be designated as and to be in the name of 'Claude A. Janes, Inc. Proj. 328,' and

"3. ROBERT J. BRADEN, individually, will deposit in

said account from sources entirely separate and independent of the CONTRACTOR'S assets or credit, the total sum of $100,-000.00 of which $50,000.00 is to be deposited upon the opening of the account as provided in the preceding paragraph, $25,000.-00 within not less than 60 days thereafter, and the final $25,000.00 within not less than 120 days from the date of this agreement, said sums to be used in performing the construction work under the contract aforesaid and as additional loss sustaining assets;

"4. Robert J. Braden and Claude A. Janes will act as trustees of all moneys deposited in said account or coming into their possession or control within the terms of this agreement;

"5. CONTRACTOR or the trustees, CLAUDE A. JANES and ROBERT J. BRADEN, shall and will deposit or cause to be deposited into and for the credit of said trust account in said bank, any and all estimate payments and any and all moneys payable and paid by anyone to CONTRACTOR under and pursuant to aforesaid construction contract between CONTRACTOR and the State of Ohio for construction work performed from time to time by or on behalf of CONTRACTOR, including final estimate payment and retained percentage, the intent being and which is that besides the deposits of $100,000.00 made or to be made by Robert J. Braden as aforesaid in the trust account aforesaid, any and all moneys payable and paid by State of Ohio to CONTRACTOR under and pursuant to said construction contract shall be deposited promptly upon receipt thereof, into and for the credit of aforesaid trust account, without any exception whatsoever;

"6. CONTRACTOR will and shall arrange with aforesaid bank at the time of establishing the aforesaid trust account whereby any and all withdrawals therefrom or charges thereto shall be upon check or checks bearing the signature of Robert J. Braden or Claude A. Janes, or their nominee (s), but any withdrawals made shall be in accordance with the purposes of the trust as expressed herein, and said trustees shall be and hereby agree to be personally responsible for replacement of any withdrawals made for any purpose other than provided.

"7. That the Braden deposits of $100,000.00 plus any and all moneys received from the State of Ohio on account of the construction work under the aforesaid contract, or as much

thereof as necessary, shall be used to pay and discharge any and all obligations incurred by or on behalf of CONTRACTOR in, on or about the construction provided for under the contract with State of Ohio aforesaid, all as and which shall be approved by the Trustees, that no part of said $100,000.00 deposit and no part of the construction contract moneys to be paid, and paid to CONTRACTOR by State of Ohio shall be diverted or used for any other purpose whatsoever, than as aforesaid, (except with the express written consent of BUCKEYE) until the construction contract and work aforesaid has been fully completed and has been fully accepted by State of Ohio, and any and all debts and obligations of any kind or nature whatsoever incurred by, for or on behalf of CONTRACTOR, shall first have been fully paid and discharged and until BUCKEYE has been fully released from any and all liability under and by reason of having executed aforesaid bond;

"8. An executed copy of this Agreement shall be delivered to the aforesaid bank in such manner whereby said bank will make acknowledgment thereof to BUCKEYE in a manner suitable to it.

"Signed, Dated and Delivered at Marietta, Ohio, this 3rd day of September, 1958.

> "CLAUDE A. JANES, INC.
> By /s/ Claude A. Janes, President
> Attest /s/ Cecil C. Dye, Secretary
> "/s/ Claude A. Janes, individually
> /s/ Robert J. Braden, individually
> "BUCKEYE UNION CASUALTY COMPANY
> By /s/ R. R. Middleton, attorney in fact

"Copy of foregoing agreement received this 5th day of September, 1958.

> "THE PEOPLES BANKING & TRUST CO.
> Marietta, Ohio
> By /s/ R. H. Morris, President."

Thereafter, Buckeye as surety for Janes, Inc., executed and delivered a performance bond to the state of Ohio in the penal sum of $1,524,400. The Highway Department of the state of Ohio then entered into a formal contract with Janes, Inc., for Project 328 on September 5, 1958. Work started on Project 328 soon after September 5, 1958. Project 328 was substantially

completed in December 1959. On that date the state of Ohio had paid Janes, Inc., all due it under the contract except the final payment. This final payment withheld was at least $160,000 and not more than $176,000. Janes, Inc., at this time owed third parties for work, material and equipment on Project 328, approximately $415,000. The difference between $176,000 and $415,000 is $239,000. In fact, it is this law suit. It is the bone of contention. It is Buckeye's possible exposure. It is also a substantial sum of money.

During 1958 and 1959 Janes, Inc., also had a contract with the state of Ohio for Project 316 which was completed after September 3, 1958. Janes, Inc., was also doing road construction work in Hocking County and Vinton County, Ohio. Janes, Inc., was also building an airport in West Virginia. In May 1959, Braden and Janes organized another corporation, the Rex Construction Company. Rex was to be an operating company. Janes, Inc., and Rex shared office space and officers. The reason we recited the foregoing additional facts will soon become apparent.

On March 18, 1960, Buckeye instituted this lawsuit in the Common Pleas Court of Washington County by filing a petition, naming Braden, Janes, and Janes, Inc., as defendants. Braden and Janes were sued personally and as trustees. The petition sets forth two causes of action. First, specific performance of the agreement of September 3, 1958, as to the $100,000 deposit by Braden. Second, an accounting by Braden and Janes as trustees of all money received by them from Braden and the state of Ohio on Project 328, and, also, to impose personal liability upon Braden and Janes for improper disbursements and use of trust funds. Buckeye prayed for: (1) Specifc performance by Braden or a personal judgment against him in the sum of $100,000; (2) appointment of a receiver; (3) a declaration that Braden and Janes are trustees of all money received from Braden or the state of Ohio on Project 328 and an accounting therefor; and (4) an order directing Braden and Janes to turn over to the receiver all moneys found not to have been paid by the trustees on obligations attributable to Project 328 or, in the alternative, a personal judgment against Braden, individually and as trustee, and Janes, individually and as trustee, *in favor of the receiver* in the amount determined to have been improperly expended.

To Buckeye's petition, Braden, Janes, and Janes, Inc., moved and then demurred. Both were overruled. An answer was filed on August 24, 1960. Depositions were filed by both sides. On December 23, 1960, Buckeye filed a reply and a motion for summary judgment. On December 29, 1960, Braden, Janes, and Janes, Inc., filed a first amended answer. Additional depositions were filed by all. On January 20, 1961, a reply to the first amended answer was filed by Buckeye. The motion for summary judgment was denied on January 26, 1961.

The first amended answer of Braden, Janes, and Janes, Inc., sets forth eight defenses. The first defense, after certain admissions, was a general denial. The second defense was that Buckeye's agents knew that the word "obligations" used in paragraph 7 of the agreement of September 3, 1958, included maintenance, depreciation, rental value and all incidental costs for machinery and equipment used on Project 328. The third defense was that Buckeye had inspected Janes, Inc.'s, records in April 1959, and thereby learned or could have learned that payment was being made to Janes, Inc., for costs incidental to the use of equipment and rental value thereof and that there had been changes made in the handling of bank accounts. The fourth defense was laches. The fifth defense was that Buckeye, by reinsurance, had reduced its exposure to 30 per cent of the penal sum of the bond and had not joined Buckeye's reinsurers. The sixth, seventh and eighth defenses were the demurrers, general and special, previously overruled by the trial court.

Buckeye's reply admitted certain allegations contained in the first amended answer but denied generally the defenses set forth in the pleading. The issues joined are so apparent that we will not restate them.

On March 10, 1961, the defendants filed a motion for an order requiring issues of fact to be tried by a jury. The motion was denied. Trial was had to the court on the 18th, 19th, 20th and 21st of April 1961. The opinion of the court was filed on June 20, 1961. The entry containing the order of the trial court was journalized on August 22, 1961. Defendants' motion for a new trial was overruled on August 28, 1961. This proceeding was seasonably commenced.

The findings of the trial court on the issues joined are as follows:

"This cause came on for trial before the court and, on consideration of the pleadings, the evidence and the briefs of the respective parties, the court finds: (1) that a trust agreement was created and was entered into as set forth in plaintiff's petition; (2) that said trust agreement was so executed as an inducement to the plaintiff to sign a bond as required by the state of Ohio for Project No. 328; (3) that this trust agreement provided among other things that the defendant Braden should deposit in said trust account the sum of $100,000.00 from sources entirely separate and independent of the assets or credit of Claude A. Janes, Inc.; (4) that said trust agreement also provided that all money received from said Project No. 328 should be deposited in a trust account and that all obligations incurred as a result of the construction of Project No. 328 should be paid therefrom; (5) that the defendants have not complied with the terms of the trust agreement; (6) that defendants have not accounted for all money received from Project No. 328; (7) that defendants have not paid all obligations incurred in the construction of Project No. 328; (8) that the defendants should account for the sum of $309,085.04, or a lesser sum, if a lesser sum is found to be sufficient to pay all claims against Claude A. Janes, Inc. on Project No. 328."

The assignments of error are:

1. Said Court of Common Pleas erred in refusing to allow defendants a trial by jury;

2. Said Court of Common Pleas erred in refusing to sustain defendants' demurrer to the first cause of action;

3. Said Court of Common Pleas erred in refusing to sustain demurrer to the second cause of action;

4. Said Court of Common Pleas erred in refusing to sustain defendants' demurrer to the petition based on improper joinder of causes of action and of parties;

5. Said Court of Common Pleas erred in finding that a trust agreement was created and was entered into as set forth in plaintiff's petition;

6. Said Court of Common Pleas erred in finding that all obligations incurred as a result of the construction of Project No. 328 should be paid from a trust account, when the agreement states the money should be "used to pay and discharge any and all obligations";

7. Said Court of Common Pleas erred in finding that defendants have not complied with the terms of said agreement;

8. Said Court of Common Pleas erred in finding that defendants have not accounted for all money received from Project No. 328;

9. Said Court of Common Pleas erred in finding that defendants should account for the sum of $309,085.04, or a lesser sum, if a lesser sum is found to be sufficient to pay all claims against Claude A. Janes, Inc., on Project No. 328;

10. Said Court of Common Pleas erred in ordering adjudging and decreeing that the defendants deposit the sum of $17,-207.95 with its clerk;

11. Said Court of Common Pleas erred in rendering judgment in the amount of $170,207.95 against defendants;

12. Said Court of Common Pleas erred in retaining jurisdiction to appoint a receiver to administer the deposit or to collect the judgment and disburse the proceeds and for any other purposes that may be necessary to carry out said judgment and decree;

13. Said Court of Common Pleas erred in failing to allow equipment usage expense as an obligation of Project No. 328;

14. Said Court of Common Pleas erred in failing to find that Robert J. Braden deposited $100,000 in said Project No. 328 account;

15. Said Court of Common Pleas erred in holding that it was the duty of Robert J. Braden and Claude A. Janes to personally pay all obligations incurred in the construction of Project No. 328;

16. Said Court of Common Pleas erred in refusing to grant defendants' motion for a new trial.

The assignments of error, in number, are in keeping with the pattern of this cause. The bill of exceptions contains 500 pages. Depositions add another 150 pages. There are 75 exhibits appended to the record. Some of the exhibits consist of 30 to 35 separate pages or items. These assignments of error raise only three questions, *i. e.*:

1. Defendants were entitled to a jury trial. (Assignments Nos. 1, 2, 3 and 16.)

2. Misjoinder of causes of action and parties in Buckeye's petition. (Assignments Nos. 4 and 16.)

3. The final order of the trial court was contrary to law or not supported by the evidence. (Assignments Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16.)

We will endeavor to dispose of the assignments of error in the same order as set forth above.

Is this a chancery case? We feel that it is and that all the parties thereto so regarded it. The relief sought by Buckeye was and is equitable in nature. The special defenses raised by Braden and Janes were equitable, *e.g.*, laches. We have read and reread all the cases cited in the exhaustive briefs filed by both sides. We have attempted independent research in depth as to this problem. The result is always the same. This is a chancery case and there were no issues of fact involved which must be submitted to a jury. In addition to the cases cited in the briefs we found the following authorities helpful. *Carlisle* v. *Foster,* 10 Ohio St., 198; *Taylor* v. *Brown,* 92 Ohio St., 287; *Martini* v. *Cicatiello,* 140 N. E. (2d), 336; and *Raymond Farmers Elevator Co.* v. *American Surety Co. of N. Y.,* 207 Minn., 117, 290 N. W., 231, 126 A. L. R., 1351. The first assignment of error is not well taken.

Assignment of error number two concerns the demurrer filed on behalf of Braden as to Buckeye's first cause of action being improperly joined with the second cause. This was the action praying for specific performance against Braden. The trial court ignored this portion of the litigation, consequently we may disregard the question and dismiss it from further consideration in this opinion as it is moot. This also cures any question as to the impropriety of joining Braden and Janes as parties defendants and the objects of the second, third and fourth forms of relief prayed for. Also raised by this assignment of error is the failure to make Buckeye's reinsurers parties to this suit. We need only point out that there is no privity of contract between the reinsurers and Braden, Janes, Janes, Inc., or the state of Ohio, consequently they are not necessary parties. This assignment of error is not well taken.

The third assignment of error is directed toward the conclusions reached by the trial court and especially the manner by which it arrived at those conclusions. This facet of the case involves questions of accounting practices and theories. These are not questions of law or of fact. They are questions concerned

with the doctrine and abstract principles of a science which is pedantic and particular. There is conflict in the testimony of two certified public accountants. The trial court accepted the testimony, as to what costs are chargeable to a construction project and what costs are not chargeable thereto, that it felt was the most logical, *consistent* and compelling. We cannot find, in this massive record, any justification for reaching a different conclusion on any phase of the case.

The argument that Braden deposited the $100,000 in the trust account, then withdrew it and used it as collateral to generate $141,000 of capital for the Heller loan and that this sum was redeposited in the trust account, would be most convincing if it ended there. It doesn't end there. This sum was once more withdrawn and deposited in an account other than the trust account. It was expended without any accounting as to the portion of Project 328 it was expended for. The revelation that Braden was paid interest on the sum of $100,000 for the time that sum was in the trust account the first time is both noteworthy and interesting.

We deplore the ultimate demise of Janes, Inc. This too often happens to contractors and may eventually lead to a lack of competition in bidding on major highway construction. This would be most harmful to the taxpayers of Ohio. This apprehension on our part must not deter us from concluding that the third assignment of error is not well taken.

Finding, as we do, that the assignments of error are not well taken and that there is no prejudicial error in the proceedings we have just reviewed, we hereby affirm the judgment herein appealed from.

*Judgment affirmed.*

COLLIER and BROWN, JJ., concur.