MARTINI, Plaintiff-Appellee, v. CICATIELLO et, Defendants-Appellants.

Ohio Appeals, Seventh District, Mahoning County.

No. 3768.   Decided April 14, 1955.

William A. Gemma, James Modarelli, Youngstown, for plaintiff-appellee.

D. F. Rendinell, Frank Anzellotti, Youngstown, for defendants-appellants.

## OPINION

Per CURIAM.

Plaintiff sued his daughter Josephine and her husband Alexander Cicatiello, in the court of common pleas to have real estate situated on Bonair Avenue, Youngstown, Ohio, title to which resided in defendants, held in trust for him subject to a mortgage held by the Home Savings and Loan Company.

Plaintiff alleged in his petition that on April 15, 1950, he and defendants entered into an oral agreement by the terms of which he agreed to and did advance a total of $4680.00 to defendants to purchase a home from Alex and Mary Warg, situated on Bonair Avenue, Youngstown, Ohio, but that instead of purchasing such real property in his name defendants took title thereto in their names. Plaintiff closed the prayer of his petition by praying "for such other and further relief that may be necessary and proper in the premises, either equitable or legal."

By answer defendants admitted the purchase of the Bonair Avenue real estate on July 1, 1950, but alleged that they purchased it with their own money; and denied each and every other fact stated, averment made and allegation set forth in plaintiff's petition not by them specifically admitted to be true. By cross-petition the Home Savings and Loan Company set up their mortgage.

The trial judge, to whom the case was submitted, found "the issues joined in favor of plaintiff, Umberto Martini, against the defendants, Josephine Cicatiello and Alexander Cicatiello," and ordered, adjudged and decreed that "plaintiff, Umberto Martini, recover of the defendants, Josephine M. Cicatiello and Alexander F. Cicatiello, the sum of $5720.00 with interest as of August 1, 1953, until paid, and that this amount is a specific lien on the premises" (Bonair Avenue property) "subject to the claim of the Home Savings and Loan Company of Youngstown, Ohio," in the amount of $1984.48.

Defendants appealed from the decree of the trial court to this court on questions of law only, and assigned errors on which we will pass herein after recitation of some of the facts shown by the record.

Josephine Cicatiello was born in Youngstown in 1914, and shortly thereafter went to Italy with her father and mother, where her mother died in 1933, subsequent to which date she returned to live with her father and stepmother in Lowellville and Youngstown until she married defendant, Alexander Cicatiello in May, 1935, prior to the death of her stepmother in 1946. Subsequent thereto she and her husband lived with her father until 1953 on Bonair Avenue.

The evidence discloses that between February 27, 1947 and May 1, 1950, a savings account opened in the Dollar Savings and Trust Company in the joint names of plaintiff and defendant, Josephine. by a deposit of $1500.00, was increased by deposits to a total of $4469.10, and that the account was closed on May 1, 1950.

Defendants claim that the money was given them as a gift by plain-

tiff in appreciation for what they had done for him in maintaining a home for him and his second wife from 1933 to 1950, when he left defendants' home by court order.

Referring to withdrawals from the savings account plaintiff testified as follows:—

"A. I took it out so that we could all live together in the house, in the new house. * * *

"Q. Did she explain to you what house?

"A. No. * * *

"The Court: Now, after you moved to the Bonair house, what arrangement, what did you do, you and your daughter, with respect to the household expense?

"A. We had no understanding or agreement.

"The Court: What did you do with respect to the expenses of the house?

"A. I'd give her the money and she would do with it as she saw fit. To Pay on the mortgage."

The assigned ground that the trial judge erred prejudicially "in overruling defendant Alexander Cicatiello's motion at the conclusion of plaintiff's case" has no merit for the reason that defendants waived their right to rely on such assigned error when they accepted the ruling of the trial court, proceeded with their defense and introduced evidence in their own behalf. **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St 139.**

Appellants further assign as error that "the decision, judgment and decree of the court was not sustained by sufficient evidence and is manifestly against the **welfare** (weight) thereof," and also that "they were deprived of the right of trial by jury," since the trial court ordered, adjudged and decreed that plaintiff recover from defendants the sum of $5720.00 with interest from August 1, 1953, until paid, the defendants contending that the chancellor had no jurisdiction to render. a money judgment against them without submitting the cause to a jury.

The trial judge was sitting as a chancellor upon the issues made by the pleadings, and it is apparent that in administering equity between the parties upon the evidence presented, the chancellor determined that justice and equity would more nearly be done by allowing the title to the real estate to remain in the defendants but allowing plaintiff to have a lien on the premises in the amount of money which the court found the plaintiff had advanced to them for the purchase of the property, subject to the mortgage of The Home Savings and Loan Company. In determining the amount of such recovery the chancellor allowed defendants a credit at the rate of $70.00 per month for board furnished by defendants to plaintiff, and it is urged that the only evidence in the record as to the amount which should have been allowed as a credit for board was the testimony of defendant, Josephine, to the effect that it was worth $120.00 a month.

Of course, the chancellor was not bound to accept the testimony of Josephine as conclusive, but could form his independent judgment from the circumstances of the parties, their relationship and all the evidence before him.

We have carefully examined the evidence contained in the record and conclude that the finding and decree of the chancellor is not against the manifest weight of the evidence or contrary to law; and that the chancellor had jurisdiction to find the amount of money which was made a specific lien on the real estate involved.

In 19 American Jurisprudence, Page 181, Sections 226 and 227, it is stated:—

"If the bill seeks equitable relief, an appropriate prayer should be incorporated therein. Prayers for relief are special or general, and the cautious pleader includes both in his bill. In the special prayer, the complainant indicates the particular relief which he deems suited to his case and asks the court to grant that relief; in the prayer for general relief, he merely asks that he may have 'such other, further, and general relief as he may be entitled to.' * * *

"But the special prayer in a bill does not necessarily determine the character of the bill. The prayer may be more extensive or less extensive than, or otherwise different from, that which the bill as a whole will justify. The character of the bill is therefore determined by the contents of the whole bill taken together and chiefly by the facts contained in the stating part. The substance and not the form of the bill determines its character." (Section 226.)

"Under the general prayer, the court may grant any relief fairly conformable with the case made in the bill. * * *.

"If the special prayer is narrower than the case made in the bill, the complainant can have broader relief under the general prayer, if the record discloses his right to such relief; and under the general prayer the court may make any order or grant any relief necessary or appropriate for the purpose of giving full effect to the orders made or relief granted under the special prayer. Even a mistake in the specific relief prayed for will not deprive a party of that relief to which the nature of his case entitles him, provided there is a general prayer in the bill. * * *" (Section 227.)

It is evident from the authority cited above that the prayer in plaintiff-appellee's petition can have both a special and general prayer and therefore would be sufficient to maintain the action in the petition, and since the facts alleged in the petition constitute an equitable action if proved, and as such, if the allegations are made in good faith; it will be sufficient to entertain an equity jurisdiction, and once equity has jurisdiction it may keep jurisdiction for all purposes until final determination of the matter.

"As has been pointed out, the word 'jurisdiction,' as used to define the scope of the usual functions of a chancery court, has a special significance which carries no implication that the want of it imports lack of power to hear and determine the cause and apply an appropriate equitable remedy. It follows that 'an objection to the jurisdiction of chancery' (in this sense) 'comes too late, after a defendant has answered and contested the merits.' Such an objection must be taken by demurrer or by special averments in the answer, or it will be deemed to have been waived, and cannot be insisted upon by the party, though the court may notice it sua sponte." 16 O. Jur., Section 29, Page 73.

Since the decree entered upon the journal of the court of common pleas may be construed as a personal judgment against the defendants we find it proper to modify that decree so as to limit it to a decree of a lien only against the property in favor of the plaintiff in the amount found by the chancellor, subject to the mortgage of The Home Savings and Loan Company. A journal entry may be prepared showing such modification.

PHILLIPS, PJ, NICHOLS and GRIFFITH, JJ, concur.