THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. RUDOLPH WURLITZER COMPANY, Appellant.

Argued March 13, 1940; decided April 16, 1940.

*Jay O. Kramer* and *Jacob J. Kramer* for appellant. The Board of Aldermen did not intend to require retail dealers primarily selling new merchandise to be licensed under section B32–127.0 of the Administrative Code (L. 1937, ch. 929). (*People* v. *Tilford,* 268 N. Y. 557; *People* v. *Star Metal Smelting & Refining Co.,* 274 N. Y. 617; *Matter of Itzkowitz & Sons, Inc.,* v. *Geraghty,* 139 Misc. Rep. 163; *City of New York* v. *Vandewater,* 113 App. Div. 456.)

*Frank L. Weil* and *Theodore Tannenwald, Jr.,* for Retail Dry Goods Association of New York City, *amicus curiæ.* The provisions of article 19 of chapter 32 of the Administrative Code indicate that licenses should not be required of retailers who merely sell used merchandise obtained solely in connection with the sale of new merchandise. (*City of New York* v. *Vandewater,* 113 App. Div. 456; *Eastman* v. *City of Chicago,* 79 Ill. 178.)

*William C. Chanler, Corporation Counsel* (*Stanley Buchsbaum* and *Paxton Blair* of counsel), for respondent. The resale of second-hand musical instruments obtained as part payment in the sale of other instruments is violative of the Administrative Code unless the seller obtains a second-hand dealer's license. (*People* v. *Bates,* 198 N. Y. Supp. 440.)

SEARS, J. The defendant has been convicted of a violation of an ordinance of the city of New York (Administrative Code of the City of New York [Laws of 1937, ch. 929], ch. 32, art. 19, § B32–127.0, p. 1113) which made it unlawful for any person to act as a dealer in second-hand articles without a license therefor. The ordinance contains the following pertinent provisions:

" § B32–126.0. Definition. a. Whenever used in this article, the words ' dealer in second-hand articles ' shall mean any person dealing in the purchase or sale of second-

hand articles of whatever nature, or dealing in the purchase or sale of any second-hand manufactured article composed wholly or in part of gold, silver, platinum or other metals, or in the purchase or sale of old gold, silver or platinum, or any person dealing in the purchase of articles or things comprised of gold, silver or platinum for the purpose of melting or refining or engaged in melting precious metals for the purpose of selling, or in the purchase or sale of pawnbroker tickets or other evidence of pledged articles, or, not being a pawnbroker, who deals in the redemption or sale of pledge articles.

" b. Nothing contained in this article shall be construed to apply to pianos, books, magazines, rugs, tapestries, burlaps, paintings, drawings, etchings and engravings; nor to exchanges of, returns of, or credits on merchandise where the article or articles exchanged, returned or credited are accepted in full or part payment for new merchandise; nor to the first purchase or sale in the city of any imported second-hand article.

" § B32–127.0. License required. It shall be unlawful for any person to act as a dealer in second-hand articles without a license therefor."

Some indication of the purpose of the ordinance and of the evils which it was intended to correct is disclosed by other provisions of the ordinance as follows:

" § B32–129.0. Report to the police commissioner. Every dealer in second-hand articles, upon being served with a written notice so to do by a member of the police department, shall report to the police commissioner * * * a copy of the records * * * of all goods or articles or any part thereof, purchased, received or sold in the course of his business, during the days specified in such notice.

" § B32–130.0. Restrictions. * * * b. It shall be unlawful for any such dealer to purchase any second-hand goods, or things from any person whom he knows to be or has reason to believe is a minor, apprentice, or servant.

" c. It shall be unlawful for any such dealer to purchase any second-hand goods or articles from any person between

the hours of six o'clock in the evening and seven o'clock in the morning.

" d. It shall be unlawful for any such dealer to sell or dispose of any articles or things  *  *  *  received from persons known to be jewelers, dealers, banking institutions, executors or administrators, until the expiration of fifteen days after such purchase or redemption."

" § B32–132.0. Record of purchase and sales. a. Every dealer in second-hand articles shall keep a book in which shall be legibly written in English, at the time of every purchase or sale, a description of every article so purchased or sold  *  *  *  the name, residence and general description of the person from whom such purchase was made or to whom sold and the day and hour of the purchase or sale  *  *  *."

The record shows that on the 13th day of July, 1939, the defendant, which had no license to act as a dealer in second-hand articles, through a salesman in its large store on Forty-second street in the city of New York, contracted to sell to the complaining witness, an inspector in the Department of Licenses of the city, a used bass accordion for the sum of one hundred and twenty-five dollars. In addition to the proof of this single transaction, the record contains defendant's admissions that the defendant sells musical instruments which it takes in part payment for articles sold. In other words, it resells what are familiarly known as " trade-ins." The conviction rests on the evidence and admissions stated.

The defendant contends not only that the ordinance was not intended to cover the business of a merchant who deals principally in the sale of new articles, but also contends specifically that used articles taken in trade as part payment is not violative of the ordinance. As the ordinance is penal in character, it must be construed strictly, and the exception relating to credits on merchandise where the articles credited are accepted in full or part payment for the new merchandise must be construed to include the taking in of any articles in payment or part payment and not to be restricted to those previously sold by the dealer.

But, urges the prosecution, even if the act of trading in used articles is excepted from the condemnation of the ordinance, the sale of the articles so obtained by the dealer would not be excepted and the defendant on its admission would be violating the ordinance. Our attention is directed to the disjunctive " or " between buying and selling in the definition of a dealer in second-hand articles. We do not read the ordinance so literally. The word " dealer " refers in general to one who buys and sells. A farmer who grows and sells, a miner who takes from the ground and sells, a manufacturer who fabricates and sells, would not ordinarily be called a dealer. The use of the word " dealer " has significance. While proof of either buying or selling under this ordinance would be proof of acting as a dealer in the transaction, the ordinance could hardly be intended to inhibit selling by the unlicensed merchant of the same article, the acquisition of which is excepted by the very terms of the ordinance from its condemnation. A construction which condemned a sale in such a case would make the article of little value to the merchant. So unsatisfactory a result should not be imposed unless the language offers no escape from it.

Our conclusion is, therefore, that a violation of the ordinance was not established upon the record before us.

The judgments of the Court of Special Sessions of the City of New York, Appellate Part, and of the Magistrates' Court of the City of New York should be reversed, and the information dismissed.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and CONWAY, JJ., concur.

Judgments reversed, etc.