**Melvin D. RODE, Plaintiff,**

v.

**NATIONAL SURETY CORPORATION, a Foreign corporation, Defendant.**

**Civ. No. 941.**

United States District Court
D. Minnesota, Second Division.

Sept. 4, 1957.

J. B. Forbes, Marshall, Minn., Attorney for plaintiff.

G. P. Mahoney, Minneapolis, Minn., Attorney for defendant.

DEVITT, District Judge.

The question for decision here is as to the proper interpretation of the Minnesota law governing the operation of livestock buyers and dealers as it relates to the liability of the surety on the bond furnished by such a buyer and dealer.

The plaintiff previously recovered a judgment in the state district court against one John Jacobs for damages he suffered as a result of the purchase of diseased pigs from Jacobs. Jacobs was the agent of one George Jaeckels who was a licensed livestock buyer and dealer and who had been bonded by the present defendant as required by Minnesota Statutes Annotated § 239.18. The bond in question, which also applied to agents of the named principal, protected those who dealt with a buyer or dealer of livestock against loss by reason of fraud, dishonesty, forgery and theft.

This action was instituted to recover over against the National Surety Corporation as the surety of the agent Jacobs, the case having been removed to this court on grounds of diversity of citizenship. The judgment roll of the state district court proceedings was introduced into evidence and the case was submitted to this court on stipulation. The issues for decision are whether the bond applied to sales, as well as purchases, made by the agent and whether the judgment of the state court is conclusive in this action.

The statute requiring licenses and bonds is M.S.A. § 239.18 and it provides that all buyers or dealers of livestock shall be so licensed and bonded. Buyer or dealer is defined in M.S.A. § 239.05(4) as " * * * any person, firm, corporation, or his or its employees, agents, or representatives, engaged as a buyer or dealer of livestock * * *" Prior to 1949 the statute referred only to buyers. The plaintiff contends that by the insertion of the word "dealers" the legislature,

intended to broaden the coverage so as to include sales.

The defendant argues that from a reading of the entire amended statute it is plain that the term "dealers" does not include those who sell, and that the amendment was merely intended to expand the previous coverage so as to include those who buy for the purpose of reselling. The defendant, in support of this view, places reliance upon the fact that the statute imposes certain other obligations on the buyer such as feeding and watering stock before buying and requires him to keep certain records. These requirements were not changed in any way by the 1949 amendment.

█ Where diversity of citizenship is the jurisdictional ground for action, the federal district court sits, in effect, as another state court. Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079. As such we must be governed by state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. On the issue which has been made the principal point of contention between the litigants, the Minnesota courts have furnished us with no helpful precedent.

█ It is a general rule of statutory construction that the adoption of an amendment raises a presumption that the legislature intended to make some change in the existing law. Western Union Telegraph v. Spaeth, 232 Minn. 128, 44 N.W.2d 440. The defendant contends that "dealer" means only one who buys for the purpose of resale. However, it is obvious that this interpretation would result in no expansion of coverage since dealers—buyers for the purpose of resale—would have been already covered by the term buyer.

█ Dealer is commonly defined as one who buys to sell again, but not one who buys to keep or makes to sell. See Brown & Zortman Machinery Co. v. City of Pittsburgh, 375 Pa. 250, 100 A.2d 98; People v. Rudolph Wurlitzer Co., 282 N.Y. 457, 26 N.E.2d 976. The agent Jacobs admitted being in the business of buying and selling livestock and it

seems clear to this court that this is precisely the sort of activity that the legislature sought to cover by the use of the word "dealer." To interpret the statute as applying only to buyers would be to deprive the 1949 amendment of any meaning. The statute must be interpreted to include sales made by one in the business of buying and selling.

The practical construction of the statute has been in accord with this view. The Minnesota Railroad & Warehouse Commission, the agency charged with the administration of the law, apparently viewed the law in this light. On its application form for livestock buyers or dealers' licenses, there is contained an explanatory note which, among other things, states that the application must be accompanied by a surety bond and that such is "* * * required by law and is for the protection of *any person dealing* with such applicant or his agent * * *." (Emphasis supplied.) Surely, "any person dealing" with a dealer would include one making purchases from him. The bond form is similarly worded. It protects "each person dealing" with the dealer or his agent.

While not compelling the conclusion reached above, it is interesting to note that the legislature in other enactments has consistently defined the word "dealer" as including one engaged in both buying and selling. See M.S.A. § 360.511 (8); M.S.A. § 296.01(9); M.S.A. § 80.-01(11) and M.S.A. § 168.011(21).

██ However, the plaintiff, to prevail in this action, must also establish that what the defendant was bonding against has occurred. In the present case the plaintiff introduced the judgment roll from the state district court case and contends that this conclusively proves fraud on the part of Jacobs. The rule in Minnesota is that:

"A judgment against the principal named in a bond is evidence against the surety where the surety is apprised of the pendency of the action with notice and opportunity to defend." Gilloley v. Sampson, 203 Minn. 233, 244, 281 N.W. 3, 8.

Where notice is not given, the judgment is evidence of nothing more than its rendition. Pioneer Savings & Loan Co. v. Bartsch, 51 Minn. 474, 53 N.W. 764. The failure to give such notice means that the judgment is not binding on the surety, who, in a proper case, may litigate over again every essential fact necessary to support the judgment. See 30 Am.Jur. Sec. 238, at page 971. The surety was not a party to the state court action and the plaintiff has introduced no record of any notice given the surety at any stage of the proceedings. The judgment roll is silent on the question of notice. Since the burden of proving his case rested upon the plaintiff, he also had the burden of proving such notice, if given, since this was a necessary element of his claim that the state court judgment was conclusive upon the defendant surety company.

The plaintiff has cited a statement from the case of Raymond Farmers Elevator Co. v. American Surety Co., 207 Minn. 117, 290 N.W. 231, 126 A.L.R. 1351 as compelling a contrary view. That case is not controlling here because the court there expressly noted that in the case cited as authority for its statement, notice had been given to the surety, and in the actual case before the court, the surety had been joined as a party.

The conclusion thus reached compels a finding for the defendant, but even if notice had been given the surety in the state court case, the judgment probably would not have been conclusive upon the question before this court in view of the application of the principle of res judicata or estoppel by verdict. The defendant in the state court moved for a directed verdict on the dual grounds of fraud (covered by the bond) and breach of warranty (not covered by the bond); the motion was granted without specifically stating whether it was granted upon the ground of fraud or breach of warranty or both.

In some states the rule is that when a number of issues are submitted and a general verdict returned, the verdict is prima facie evidence that all issues were found in favor of the party for whom the verdict was returned. Minnesota does not follow this rule. In Minnesota "A judgment is conclusive, by way of estoppel, only as to facts without the existence and proof or admission of which it could not have been rendered." Macomb Sewer-Pipe Co. v. Hanley, 61 Minn. 350, 63 N.W. 744, 745. See Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214 where the Court, in determining whether this doctrine of estoppel could be applied, made this statement:

"But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined."

See also Happy Elevator No. 2 v. Osage Const. Co., 10 Cir., 1954, 209 F.2d 459.

Thus it would appear that the judgment roll from the state district court is not conclusive on the question of fraud on the part of the seller as against the defendant surety company.[1]

1. A reading of the transcript of what occurred in the state court proceedings leaves one with the impression that the plaintiff moved for a directed verdict on the grounds that there had been a breach of warranty and that the court directed the verdict on that ground alone. It is true that, after moving for a directed verdict on the grounds of breach of warranty and discussing the support in the record for it, plaintiff's attorney did state "secondly" that he thought there

The defendant will please prepare appropriate findings and form of judgment with copy to the plaintiff.

was a basis for an action on the grounds of deceit and fraud.

The presiding judge said:

"I think it is a question for the jury as to the amount of damages. The motion was that the jury be directed to determine the amount of damages. That motion is granted. The jury will go ahead and determine the amount."

Later, speaking to the jury, the Court said:

"* * * On the present state of the record the parties will make their arguments to you as to the amount of damages that the plaintiff has sustained. There has been a breach of warranty. * * *"

No statement was made that fraud had been established.