## MINNESOTA LABORERS HEALTH AND WELFARE FUND, et al., Appellants,

v.

## GRANITE RE, INC., defendant and third party plaintiff, Respondent,

v.

**Brent Anderson, third party defendant, Respondent,**

**JoAnne M. Anderson, third party defendant, Respondent,**

**EnviroTech Remediation Services, Inc., third party defendant, Respondent,**

**Brent Krause, et al., third party defendants, Respondents,**

**David P. Sobaski, third party defendant, Respondent,**

**Karla P. Sobaski, third party defendant, Respondent.**

## No. A12–1017.

Court of Appeals of Minnesota.

Dec. 24, 2012.

Review Granted March 19, 2013.

---

Pamela Hodges Nissen, Rebecca A. Peterson, Anderson, Helgen, Davis & Nissen, P.A., Minneapolis, MN; and

Ruth S. Marcott, Felhaber, Larson, Fenlon & Vogt, P.A., St. Paul, MN, for appellants Fund, et al.

Daniel R. Gregerson, Joshua A. Dorothy, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, MN, for respondent Granite RE, Inc.

Eric W. Forsberg, Forsberg Law Office, P.A., Minneapolis, MN, for respondents Brent D. Krause, Jane Krause, William Sievers, Jill Sievers, Daniel Krause, Margaret Krause.

Brent D. Anderson, JoAnne M. Anderson, Edina, MN, pro se respondents.

David P. Sobaski, Karla P. Sobaski, Inver Grove Heights, MN, pro se respondents.

Considered and decided by HUDSON, Presiding Judge; CHUTICH, Judge; and KLAPHAKE, Judge.

## OPINION

KLAPHAKE, Judge.*

Appellants challenge the summary judgment dismissing their claims against respondent, arguing that the district court erred by concluding that (1) appellants were not intended third-party beneficiaries of a surety bond issued by respondent; and (2) the surety bond's one-year limitations period was not tolled as to the surety by the bond principal's fraudulent conceal-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ment of a cause of action. We reverse and remand for further proceedings.

## FACTS

Appellants [1] (the funds) are "multi-employer, jointly-trusteed employee benefit plans" that collect funds on behalf of union employees from employers bound by various collective bargaining agreements (CBAs). When an employer hires a union member, the employer agrees to pay both an hourly wage and the cost of fringe benefits; rather than being paid to an individual employee, the cash payments for fringe benefits are deposited in the appropriate fund.

EnviroTech Remediation Services, Inc., was an environmental contractor that provided asbestos and lead abatement services. It was a member of the Minnesota Environmental Contractors Association (MECA), which was a party to a CBA with the Laborers District Council of Minnesota and North Dakota (the union); the funds were associated with this union. The CBA between MECA and the union required employers to pay the funds monthly for the value of fringe benefits for each union employee, based on the number of hours of work performed by the employee. The funds had a collection policy that required an audit of an employer's records on the average of every two years, with up to three years between audits allowed. Employers were obligated to maintain records to facilitate audits.

EnviroTech was hired as a subcontractor by Brandenburg Industrial Services for asbestos and lead remediation on the Xcel Energy High Bridge Generating Plant project. Because the subcontract required it, EnviroTech acquired a surety bond from respondent Granite RE, Inc., that guaranteed payment to all claimants for "labor and material used or reasonably required for use in the performance of the subcontract." The bond defined a "claimant" as "one having a direct contract with [EnviroTech] for labor, material, or both, used or reasonably required for use in the performance of the contract[.]" Any action on the bond had to be initiated within one year following the date on which EnviroTech finished its work.

EnviroTech finished work on the project in May 2009. In July 2009, the funds filed a complaint against EnviroTech in federal court, alleging that EnviroTech failed to pay its required contributions for fringe benefits. As part of this lawsuit, the funds subpoenaed supporting documentation from Brandenburg; after comparing EnviroTech's payroll records to the sign-in/sign-out sheets from the job site, the funds discovered that some of EnviroTech's employees were paid in cash or with checks labeled as "accounts payable" rather than payroll checks. The funds calculated that EnviroTech underpaid its fringe benefit contributions by approximately $250,000.

The funds finished the audit of EnviroTech's payroll and sign-in/sign-out sheets in February 2011, and shortly thereafter filed a claim against the surety bond seeking payment of the shortfall. Granite RE denied the claim. The funds began this declaratory judgment action, seeking clarification of their right to payment from respondent, and to award attorney fees and costs. Granite RE denied liability.

The parties filed cross-motions for summary judgment; the district court granted Granite RE's motion for summary judg-

---

1. Appellants are (1) the Minnesota Laborers Health and Welfare Fund, (2) the Minnesota Laborers Pension Fund, (3) the Minnesota Laborers Vacation Fund, (4) the Construction Laborers' Education, Training and Apprenticeship Fund, and (5) the Minnesota Laborers Employers Cooperation and Education Trust.

ment and denied the funds' motion. The district court concluded that (1) the funds were not a "claimant" within the meaning of the bond language; (2) the funds were not entitled to payment as third-party beneficiaries; and (3) the funds' claim was barred because it was filed after expiration of the one-year contractual limitations period. This appeal followed.

## ISSUES

1. Did the district court err by determining that the funds were not intended third-party beneficiaries of the bond contract between respondent and EnviroTech?

2. Did the district court err by concluding that the funds' claim was precluded by the contractual limitations period?

## ANALYSIS

On appeal from summary judgment, we review the record to determine whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Dahlin v. Kroening,* 796 N.W.2d 503, 504 (Minn.2011); Minn. R. Civ. P. 56.03. We view the facts in the light most favorable to the nonmoving party and review questions of law de novo. *Bearder v. State,* 806 N.W.2d 766, 770 (Minn.2011).

### 1. *Third–Part–Beneficiary Status*

■■■ The funds argue that they are intended third-party beneficiaries of the surety bond contract between respondent and EnviroTech. Although "a stranger to a contract does not have rights under the contract, ... an exception exists if a third party is an intended beneficiary of the contract." *Hickman v. SAFECO Ins. Co.,* 695 N.W.2d 365, 369 (Minn.2005). A person is an intended beneficiary if (1) the beneficiary's right to performance reflects the intent of the parties to the contract;

and (2) performance of the contract "satisf[ies] an obligation of the promisee to pay money to the beneficiary [the duty owed test]; or ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance [intent-to-benefit test]." *Id.* (quoting Restatement (Second) of Contracts § 302 (1979)). As *Hickman* summarizes, "if recognition of third-party rights is 'appropriate' and either the duty owed test or the intent to benefit test is met, the third party can recover as an 'intended beneficiary.'" *Id.* at 369–70 (quoting Restatement (Second) of Contracts § 302 (1979)).

■■■ A "duty owed" can arise when the intended beneficiary is the ultimate recipient of the performance of a promise. *Julian Johnson Constr. Corp. v. Parranto,* 352 N.W.2d 808, 811 (Minn.App.1984). This generally involves a promise by the promisor of a contract to pay the promisee's debt to another. Restatement (Second) of Contracts § 304 cmt. (1979); *see also Cretex Cos. v. Constr. Leaders, Inc.,* 342 N.W.2d 135, 139–40 fn. 2 (1984) (citing Restatement [First] of Securities § 165 (1941) for proposition that if surety for a contractor guarantees payment of labor, those providing labor have a right against surety as third-party beneficiaries).

Although the surety bond contract here does not mention a duty to pay the funds, it guarantees payment for all "labor and material used or reasonably required for use in the performance of the subcontract." EnviroTech was obligated by the CBA, that is, it had a duty, to make the fringe benefit payments to the funds on behalf of its union employees; the fringe benefits payment were never intended to be made to individual employees, but were to be made to the funds on behalf of the individual employees. Payment under the surety bond would satisfy EnviroTech's

obligation under the CBA to pay its union employees not only wages, but also the fringe benefits that were a part of each employee's compensation. Because the surety bond guaranteed the payment of all labor costs, the parties to the bond contemplated a benefit to a third party, the funds. This satisfies the duty-owed test of *Hickman*.

The district court erred by concluding as a matter of law that the funds were not intended third-party beneficiaries of the surety bond contract.

### 2. *Limitations Period*

■■■ The district court concluded that the funds were barred from pursuing a claim against the surety because they began their action almost two years after EnviroTech finished work on the named project; the surety bond provided that all claims must be filed within one year after completion of work or delivery of materials. The district court further concluded that this limitations period was not tolled by the fraudulent-concealment doctrine, because Granite RE, who had no direct contract with the funds and was not a party to the fraud, could not be held liable by the funds for EnviroTech's fraudulent concealment.

> [W]hen a party against whom a cause of action exists in favor of another, by fraudulent concealment prevents the other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or might have been discovered by the exercise of diligence.

*Schmucking v. Mayo*, 183 Minn. 37, 38–39, 235 N.W. 633, 633 (1931). The party alleging tolling of a limitations period because of fraudulent concealment must show "(1) the defendant made a statement that concealed plaintiff's potential cause of action, (2) the statement was intentionally false,

and (3) the concealment could not have been discovered by reasonable diligence." *Sletto v. Wesley Constr. Co.*, 733 N.W.2d 838, 846 (Minn.App.2007); *see also Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn.App.2003).

The district court did not address the question of whether the funds presented sufficient evidence of fraudulent concealment. The funds alleged that EnviroTech paid employees with cash and non-payroll checks in order to circumvent the fringe benefit payments and filed false payroll statements to conceal these actions; further, the funds assert that they could not have discovered this fraud earlier because they were stymied in their attempts to audit the payroll records. This evidence sets forth a prima facie case of fraudulent concealment by EnviroTech that would toll the limitations period.

■■■ The second question is whether Granite RE can be held responsible for EnviroTech's actions. Granite RE and EnviroTech were in a suretyship relationship. A suretyship is "[t]he legal relationship that arises when one party assumes liability for a debt, default, or other failing of a second party. The liability of both parties begins simultaneously. In other words, under a contract of suretyship, a surety becomes a party to the principal obligation." *Black's Law Dictionary* 1580 (9th ed.2009). If the principal defaults on a debt, the surety must pay but has a right of indemnification against the principal. *MacKenzie v. Summit Nat'l Bank of St. Paul*, 363 N.W.2d 116, 120 (Minn.App. 1985). "It is generally the responsibility of the surety to make sure that the principal obligor performs his duty." *Id.* The creditor has no responsibility to demand payment from the principal, but may equally demand payment from the surety; the surety, on the other hand, must perform the principal's obligations, while re-

taining a right to indemnity from the principal. *Id.; see also Benedict v. Thoe,* 37 Minn. 431, 432, 35 N.W. 10, 11 (1887). Because respondent assumed EnviroTech's liability to fully pay wages and benefits to the union employees, respondent is bound by its surety relationship with EnviroTech to step into EnviroTech's shoes for purposes of liability.[2]

We conclude that respondent, as surety, is bound by EnviroTech's alleged fraudulent concealment of a cause of action, but genuine issues of material fact remain about whether the funds acted with reasonable diligence to discover the fraudulent concealment. We therefore reverse the district court's summary judgment and remand for further proceedings consistent with this opinion.

### DECISION

The district court erred by concluding that the funds were not intended third-party beneficiaries of the surety bond issued by Granite RE on behalf of Enviro-Tech; the surety bond guaranteed full payment of all labor costs, which included fringe benefit payments to the funds required by the CBA; therefore payment under the bond would satisfy a duty owed by EnviroTech to the funds. And, because surety's liability is determined by its principal's actions, fraudulent concealment by EnviroTech tolls the bond's limitations period as to both EnviroTech and Granite RE.

**Reversed and remanded.**

---

**2.** We note that this position is favored by the Restatement (First) of Security § 121 (1941), which states that "[w]here a principal's concealment of his default prevents the running of the Statute of Limitations until the discovery of the default, the statute does not begin to run in favor of the surety until the creditor may reasonably be expected to discover the default."