MINNESOTA LABORERS HEALTH AND WELFARE FUND, et al., Respondents,

v.

GRANITE RE, INC., Appellant,

v.

Brent Anderson, Respondent,

JoAnne M. Anderson, Respondent,

EnviroTech Remediation Services, Inc., Respondent,

Brent Krause, et al., Respondents,

David P. Sobaski, Respondent,

Karla P. Sobaski, Respondent.

No. A12–1017.

Supreme Court of Minnesota.

April 2, 2014.

Pamela Hodges Nissen, Amanda R. Cefalu, Anderson, Helgen, Davis, & Nissen, P.A., Minneapolis, MN; and Ruth S. Marcott, Felhaber, Larson, Fenlon & Vogt, P.A., Saint Paul, MN, for respondents Minnesota Laborers Health and Welfare Fund, et al.

Daniel R. Gregerson, Joshua A. Dorothy, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, MN, for appellant Granite Re, Inc.

Dean B. Thomson, Kristine Kroenke, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for amicus curiae The Surety & Fidelity Association of America.

## OPINION

PAGE, Justice.

Appellant Granite Re, Inc. (Granite Re), seeks our review of a court of appeals decision reversing the dismissal of a lawsuit brought by respondents Minnesota Laborers Health and Welfare Fund, et al. (the Funds),[1] seeking payment on a surety bond.[2] The district court dismissed the Funds' declaratory judgment claim, granting summary judgment to Granite Re, because, among other reasons, the Funds' lawsuit was commenced after the one-year contractual limitations period set out in the bond had expired. The court of appeals reversed, holding that fraudulent concealment by the bond principal tolled the limitations period set out in the bond. For the reasons discussed below, we affirm.

■ Granite Re is the surety on a labor and material payment bond issued to EnviroTech Remediation Services, Inc. (EnviroTech), the principal obligor on the bond. EnviroTech was a subcontractor performing asbestos and lead abatement work on a project demolishing the High Bridge Generating Plant (the High Bridge project) in Saint Paul. Pursuant to the terms of its subcontract, EnviroTech was required to provide a performance and payment bond to ensure payment of EnviroTech's labor and material costs. Under the bond issued by Granite Re, Granite Re guaranteed payment of up to $2,067,069 to claimants[3] "for all labor and material used ... in the performance of the subcontract." The bond allows a claimant to sue on the

1. The respondents include five employee benefit funds: Minnesota Laborers Health and Welfare Fund; Minnesota Laborers Pension Fund; Minnesota Laborers Vacation Fund; Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; and Minnesota Laborers Employers Cooperation and Education Trust.

2. As third-party plaintiff in the district court, Granite Re stipulated to dismissal without prejudice of third-party defendants and respondents Brent Anderson, JoAnne M. Anderson, EnviroTech Remediation Services, Inc., Brent Krause, et al., David P. Sobaski, and Karla P. Sobaski.

3. The bond defines a claimant as "one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the subcontract."

bond if the claimant "has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed." The bond also contains a contractual one-year limitations period, which reads:

> No suit or action shall be commenced hereunder by any claimant ... [a]fter the expiration of one (1) year following the date on which [EnviroTech] ceased work on [the] subcontract it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

Under this language, all claims on the bond had to be brought within one year of EnviroTech's completion of work on the High Bridge project. EnviroTech completed its work on the project in May 2009.

As a party to a collective bargaining agreement (CBA), EnviroTech was required to contribute each month to six separate employee benefit plans. The Funds served as trustees for those benefit plans.[4] Pursuant to the CBA, EnviroTech was also required to furnish the Funds with employment and payroll records. As EnviroTech performed work, it sent fringe benefit reports to the Funds identifying the hours EnviroTech's employees worked on the High Bridge project.

In July 2009, the Funds commenced an action in federal court against EnviroTech, alleging that EnviroTech had failed to pay required fringe benefits on other projects. During discovery in that action, the Funds noticed what they claim to be discrepancies between records provided by the gen-

eral contractor on the High Bridge project and the fringe benefit reports provided by EnviroTech. Through an audit of EnviroTech's payroll records for the High Bridge project, the Funds discovered that EnviroTech at times had paid employees for their labor with checks that it recorded in its business checking account as "accounts payable" rather than "payroll," and by paying them with envelopes of cash. According to the Funds, EnviroTech did not record these off-payroll payments in its fringe benefit reports, nor did EnviroTech pay fringe benefits on these off-payroll payments. Ultimately, the Funds concluded that EnviroTech owed them $245,168 in fringe benefit payments, and made a claim on the bond. Granite Re denied the Funds' claim as time barred under the bond's limitations period because the claim was brought more than one year after EnviroTech finished its work on the High Bridge project.

The Funds commenced a declaratory judgment action against Granite Re in April 2011, seeking clarification of their right to payment under the surety bond. The Funds sought a declaratory judgment that their claim under the bond was timely in light of EnviroTech's fraudulent concealment of the actual hours worked by its employees on the High Bridge Project. On cross-motions for summary judgment, the district court granted summary judgment to Granite Re. Among other grounds, the court concluded that the Funds' claim was time barred because the Funds failed to commence litigation within the one-year limitations period set forth in the bond. The district court declined to apply the doctrine of fraudulent concealment to toll the limitations period in the bond,

---

4. A sixth fund, the Training Fund, also served as a trustee for those benefit plans but is not a party to this appeal.

reasoning that the Funds had not alleged that Granite Re was a party to Enviro-Tech's fraudulent concealment.

The court of appeals reversed, concluding that the Funds had set forth "a prima facie case of fraudulent concealment by EnviroTech," and that Granite Re, "as surety, is bound by EnviroTech's alleged fraudulent concealment." *Minn. Laborers Health and Welfare Fund v. Granite Re, Inc.*, 826 N.W.2d 210, 215–16 (Minn.App. 2012). The court of appeals also concluded that there are genuine issues of material fact surrounding the Funds' diligence in discovering EnviroTech's fraudulent concealment; therefore, the court of appeals remanded to the district court for further proceedings. *Id.* at 216.

■ On appeal from a grant of summary judgment, we determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 866 (Minn. 2000). We construe the facts in the light most favorable to the party against whom summary judgment was granted, in this case, the Funds. *See Bearder v. State*, 806 N.W.2d 766, 770 (Minn.2011). Therefore, for purposes of this appeal, we assume that EnviroTech failed to make the fringe benefit payments as alleged and that the Funds established a prima facie case of fraudulent concealment.

■ Fraudulent concealment is an equitable doctrine. *Schmucking v. Mayo*, 183 Minn. 37, 40, 235 N.W. 633, 634 (1931). We typically review a district court's decision as to whether to grant equitable relief for an abuse of discretion. *See SCI Minn. Funeral Servs., Inc. v. Washburn–McReavy Funeral Corp.*, 795 N.W.2d 855, 860–61 (Minn.2011). The question before the district court here was not whether to apply the equitable doctrine of fraudulent concealment. Rather, the question before

the district court was a purely legal question: whether fraudulent concealment by a principal obligor on a bond can toll a limitations period against the bond's surety. Therefore, we review the district court's decision de novo. *Id.* at 861 ("We review the [district] court's legal determinations de novo.").

Granite Re argues that the doctrine of fraudulent concealment does not toll the contractual limitations period in the surety bond here because: (1) Granite Re did not participate in or know about EnviroTech's fraudulent concealment; (2) the general rule that a surety stands in the shoes of the principal obligor for the purposes of equitable tolling does not apply to payment bonds; and (3) Granite Re contractually limited its obligation to pay on the bond by including a one-year limitations provision in the bond.

The Funds contend that EnviroTech's fraudulent concealment of the Funds' cause of action tolled the commencement of the bond limitations period. The Funds point out that a surety is party to the principal's obligation and is responsible for ensuring the principal performs its duties; therefore, the Funds argue, Granite Re takes on EnviroTech's liabilities as to the Funds' claim.

■ We begin our analysis by providing a short summary of the general principles of suretyship and fraudulent concealment as a foundation for our discussion. A surety bond involves a three-party relationship made up of three indispensable parties: the surety, the obligee, and the obligor, or principal. *Stabs v. City of Tower*, 229 Minn. 552, 563, 40 N.W.2d 362, 370 (1949). The issues here concern the rights of the obligee, the Funds, to bring a claim on the bond against the surety, Granite Re, based on the actions of the principal, EnviroTech. A surety bond is a contract

between the surety and the principal. *See Standard Salt & Cement Co. v. Nat'l Sur. Co.*, 134 Minn. 121, 124, 158 N.W. 802, 803 (1916) (clarifying that since a bond is a contract, "[t]he surety and his principal need no [statutory] authority to bind themselves by it"). The surety agrees to stand in the shoes of the principal if the principal defaults on an obligation to the obligee. *See Raymond Farmers Elevator Co. v. Am. Sur. Co.*, 207 Minn. 117, 119, 290 N.W. 231, 233 (1940) ("If liability of the principal is established ... [and if] the acts for which the principal is liable are within the provisions of the bond[,] ... the surety stands as to the merits in the same shoes as the principal."). However, final responsibility to the obligee rests with the principal, "who is liable to the surety" if the surety has to pay the obligee or complete work on behalf of the principal. *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 234 n. 7 (Minn.1986); *see also Wendlandt v. Sohre*, 37 Minn. 162, 163, 33 N.W. 700, 701 (1887). Ultimately, the surety's obligations are accessory or collateral to those of the principal. *See Schmidt v. McKenzie*, 215 Minn. 1, 6, 9 N.W.2d 1, 3–4 (1943).

▪▪▪ Under most circumstances, the expiration of a limitations period is an absolute bar to the plaintiff's claim. *See Mellett v. Fairview Health Servs.*, 634 N.W.2d 421, 424 (Minn.2001). We have held, however, that the equitable doctrine of fraudulent concealment is an exception to this general rule and can toll the limitations period. *Schmucking*, 183 Minn. at 40–41, 235 N.W. at 634; *see also Wild v. Rarig*, 302 Minn. 419, 450, 234 N.W.2d 775, 795 (1975). Minnesota follows the majority rule that "the statute of limitations does not run during the time that the defendant fraudulently conceals from the plaintiff the facts constituting the cause of action," and that "[a]ny concealment by positive affir-

mative act and not mere silence is itself fraudulent so as to prevent the statute from running." *Twp. of Normania v. Cnty. of Yellow Medicine*, 205 Minn. 451, 457, 286 N.W. 881, 884 (1939). We adopted the fraudulent concealment doctrine based on the precept that under principles of equity, an individual should not benefit from the protection of a statute of limitations when he or she has fraudulently hidden a legal claim. *Schmucking*, 183 Minn. at 40–41, 235 N.W. at 634. Fraudulent concealment "tolls the statute of limitations until the party discovers, or has a reasonable opportunity to discover, the concealed defect." *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990); *see also Wild*, 302 Minn. at 450, 234 N.W.2d at 795 ("Fraudulent concealment ... will toll the ... statute of limitations until discovery or reasonable opportunity for discovery of the publication by the exercise of ordinary diligence."). The plaintiff's cause of action does not accrue until discovery of or reasonable opportunity to discover the cause of action for two reasons:

(1) [T]he plaintiff who does not assert his or her right because of the defendant's fraudulent concealment is not within the 'mischief' sought to be remedied by a statute of limitations, and (2) the defendant who fraudulently conceals a cause of action 'should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him.'

*Buller v. A.O. Smith Harvestore Prods., Inc.*, 518 N.W.2d 537, 542 (Minn.1994) (quoting *Schmucking*, 183 Minn. at 40, 235 N.W. at 634).

Granite Re first argues that tolling the statute of limitations based on the doctrine of fraudulent concealment applies only to the party who has actually engaged in the fraudulent concealment—here EnviroTech.

Thus, Granite Re contends that, because it was not involved in EnviroTech's fraud or fraudulent concealment, the contractual limitations period in the bond should not be tolled against it. We disagree.

We have previously applied the fraudulent concealment doctrine to toll the limitations period against a surety that was not involved in the principal's fraud or fraudulent concealment of the claimant's cause of action. *See Shave v. U.S. Fid. & Guar. Co.*, 199 Minn. 538, 542, 272 N.W. 597, 599 (1937). *Shave* involved an effort to recover on a fiduciary bond based on a claim that the executor of a will had embezzled and converted money from a trust fund to his own use. *Id.* at 540, 272 N.W. at 598. The suit to recover on the bond was commenced after the applicable statute of limitations had expired. *Id.* at 541, 272 N.W. at 598. The surety argued that, because the limitations period had expired, it had no obligation to pay on the bond. *Id.* at 541, 272 N.W. at 598. The beneficiary relied on the doctrine of fraudulent concealment, claiming that the executor (the principal) had concealed the fact that he had not been appointed as trustee by the district court and that he had embezzled money from the trust fund. *Id.* at 540, 272 N.W. at 598. We held that "[u]ntil the discovery of this fraud the statute of limitations did not commence to run" on a claim against the executor's bond for the embezzlement of the trust fund by the executor. *Id.* at 542, 272 N.W. at 599.

*Shave* is consistent with the general rule articulated in the Restatement (Third) of Suretyship and Guaranty, which provides that the principal's fraudulent concealment

tolls the statute of limitations against the surety:

> When the principal obligor's concealment of facts giving rise to a cause of action against it under the terms of the underlying obligation prevents the running of the statute of limitations with respect to the underlying obligation until discovery of those facts, the statute does not begin to run with respect to a cause of action against the secondary obligor arising from those facts until the obligee discovers or reasonably should discover them.

Restatement (Third) of Suretyship and Guarantee § 66 (1996).[5] The Restatement's rationale is that "a choice must be made between two innocent persons, the obligee and the [surety]," and that choice "is made in favor of the obligee so long as it cannot reasonably be expected to discover the principal obligor's default" because, "[s]o long as the original duty of the principal obligor continues, the liability of the [surety] persists." Restatement (Third) of Suretyship and Guaranty § 66, cmt. a. Although we have never explicitly adopted section 66 of the Restatement, we applied these same principles in *Shave*, 199 Minn. at 542, 272 N.W. at 599 (tolling the statute of limitations against both the principal and the surety). Therefore, we conclude that fraudulent concealment can be applied to a surety that was not involved in the fraudulent concealment by the principal.

We are not alone in applying the doctrine of fraudulent concealment to toll the statute of limitations against a surety based on fraudulent concealment by the principal. Several other jurisdictions have determined that a limitations period may

---

5. A provision from an earlier Restatement similarly states: "Where the principal's concealment of his default prevents the running of the Statute of Limitations until the discovery of the default, the statute does not begin to run in favor of the surety until the [obligee] may reasonably be expected to discover the default." Restatement (First) of Security § 121 (1941).

be tolled against the surety in the event of fraudulent concealment by the principal. For example, *Russenberger v. Thomas Pest Control, Inc.,* involved a principal's fraudulent concealment of insect and structural damage to a claimant's home. 394 S.W.3d 303, 305–06 (Ark.App. 2012). The Arkansas Supreme Court held that the claimant had alleged facts sufficient to support application of the fraudulent concealment doctrine, and that the trial court had erred in granting the principal's motion to dismiss. *Id.* at 309. The court allowed the statute of limitations to be tolled against both the principal and the surety, stating that "[a] person claiming against the bond may maintain an action at law against the licensee and the surety." *Id.* In addition, in *Johnson v. Taylor,* a federal district court tolled the statute of limitations against a surety based on the principal's fraud, concluding that "the period of limitations in an action against the surety is to be measured from the time the statute began to run against the principal," and that the limitations period "did not commence to run against the principal until his fraud was discovered, or should reasonably have been discovered, by the plaintiff." 73 F.Supp. 537, 539 (D.D.C. 1947). The *Johnson* court explained that it was appropriate to toll the limitations period against the surety so as not to "frustrate and defeat the very purposes for which a surety bond is given." *Id.* at 538. A third case, *Morrissey v. Carter,* involved a county sheriff's failure to serve a summons on the defendants in a separate foreclosure action. 103 Okla. 36, 229 P. 510, 511 (1924). The plaintiff did not discover its cause of action until after the statute of limitations had expired, and sued the sheriff and the bond surety for money damages, claiming that the fraudulent concealment exception preserved the plaintiff's ability to bring a claim. *Id.* The Oklahoma

Supreme Court agreed, and held that the statute of limitations was tolled against both the principal and the surety, even though there were no facts alleging the surety's participation in the principal's fraudulent concealment. *Id.* at 513 ("[W]here there is fraud amounting to concealment of the wrongful act which the aggrieved party is prevented from knowing[,] . . . and the damages are consequential rather than direct, the statute does not commence to run till the discovery of the fraud or reasonable opportunity for such discovery, and till the damages are made manifest.").

■ Granite Re next argues that the general rule that a surety stands in the shoes of the principal for the purposes of equitable tolling does not apply to payment bonds. According to Granite Re, the fiduciary bond at issue in *Shave,* unlike the payment bond at issue here, was intended to protect the obligee from the principal's fraud. *See Shave,* 199 Minn. at 541, 272 N.W. at 598. Granite Re argues that payment bonds should be treated differently than fidelity or fiduciary bonds because payment bonds are not intended to protect against fraud—they only ensure the principal's obligations are fulfilled, which, in this case, was to pay for materials and labor. Granite Re is correct that fidelity, fiduciary, and payment bonds serve different purposes. Thus, *Shave* does not directly dictate the outcome of this case.

■ While bonds may be categorized based on the purposes they serve, those categories do not create meaningful distinctions in cases of fraudulent concealment of a claimant's cause of action. Fidelity, fiduciary, and payment bonds all involve the surety's guarantee of the principal's performance or payment. Thus, if we apply the doctrine of fraudulent concealment to fidelity bonds, which "indemnify an employer or business for loss due

to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust," *Black's Law Dictionary* 201 (9th ed.2009), or to fiduciary bonds, which "ensure the proper performance of [a trustee, administrator, executor, guardian, conservator, or other fiduciary's] duties," *id.*, we see no reason not to apply the doctrine to payment bonds, which are "given by a surety to cover any amounts that, because of the general contractor's default, are not paid to a subcontractor or materials supplier." *Id.*

Granite Re makes much of the fact that fidelity and fiduciary bonds are specifically intended to guarantee against the principal's fraud, whereas payment bonds are not. In essence, Granite Re is arguing that, because it only contracted to make payments that EnviroTech was obligated to make under the terms of the payment bond, and because Granite Re did not contract to protect against EnviroTech's fraud as does a fiduciary or fidelity bond surety, application of the doctrine of fraudulent concealment to toll the statute of limitations alters its contractual obligation. Granite Re asserts that its contractual obligation will be altered by making Granite Re pay for that which it did not contract to pay—EnviroTech's fraudulent concealment—which was not included in the calculation of its premium for the bond.

■ However, "[c]laims of fraud based on fraudulent concealment are distinct from the use of fraudulent concealment to toll the statute of limitations." 20A2 Brent A. Olson, *Minnesota Practice—Business Law Deskbook, Advanced Topics in Business Law* § 34:120 (2013–2014 ed.) (citing *Hydra–Mac Inc.*, 450 N.W.2d at 918; *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 345 n. 2 (Minn. App.1997)). It is the principal's fraudulent concealment—not the facts underlying the principal's fraud—that triggers equitable tolling. In other words, EnviroTech's fraudulent concealment of the Funds' claim for payment of fringe benefits—not EnviroTech's fraud—triggers equitable tolling of the limitations period. It is on the basis of EnviroTech's fraudulent concealment of the Funds' cause of action that the Funds seek to toll the limitations period.

We conclude, on the facts presented here, that application of the doctrine of fraudulent concealment to Granite Re as surety on EnviroTech's payment bond does not alter Granite Re's contractual obligations under the bond because Granite Re did not substantively limit its obligation in the surety bond. Granite Re simply created a limitations period shorter than the applicable statutory limitations period in Minnesota. *See* Minn.Stat. § 541.05 subd. 1(1) (2012) (creating a six-year statute of limitations "upon a contract ... as to which no other limitation is expressly prescribed"). Nor do we see any other reason on the record presented here to treat Granite Re's payment bond differently than the fiduciary bond in *Shave*, 199 Minn. 538, 272 N.W. 597. EnviroTech's fraudulent concealment stopped the clock as to the Funds' claim, and the clock restarted when the Funds discovered, or had a reasonable opportunity to discover, their cause of action.

■ Finally, Granite Re argues that it specifically included in the bond's language a provision excluding, as it is permitted to do, application of the doctrine of fraudulent concealment to the bond. *See* Restatement (Third) of Suretyship and Guaranty § 66, cmt. b (1996). Granite Re relies on the language in the bond setting the one-year limitations period. More specifically, Granite Re asserts that, because the one-year limitations period in the bond limits Granite Re's obligations

under the bond, application of the doctrine of fraudulent concealment is precluded.

The problem with Granite Re's argument is that a limitations period in a contract does not limit a party's substantive obligations under the contract. *See City of Willmar v. Short–Elliott–Hendrickson, Inc.,* 512 N.W.2d 872, 875 (Minn. 1994) ("[A] statute of limitations defense does not negate liability; it is only a procedural device that is raised after the events giving rise to liability have occurred, and which precludes the plaintiff from collecting on that liability"). Rather, as a general proposition, a contractual limitations period simply shortens the time period during which claims may be brought. The Restatement on Suretyship and Guaranty clarifies this distinction, providing that, "by contract, the parties are free to place the loss resulting from the principal obligor's concealment of its default on the obligee." Restatement (Third) of Suretyship and Guaranty § 66, cmt. b. Here, the specific language Granite Re relies on in the bond is: "No suit or action shall be commenced hereunder by any claimant ... [a]fter the expiration of one (1) year following the date on which [EnviroTech] ceased work on ... [the] subcontract."

Contrary to Granite Re's contention, this language does not place any limitations on Granite Re's substantive obligations under the bond. The language merely identifies the time period during which claims can be brought. To insulate itself from liability, Granite Re could have included a specific contractual provision in the bond that would have precluded tolling based on fraudulent concealment. *See Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960) ("Parties to ... con-

tracts, ... absent legal prohibition or restriction, are free to contract as they see fit."). The effect of such a provision would have been to invalidate Granite Re's guarantee to the bond claimants in the case of EnviroTech's fraudulent concealment, thus prohibiting equitable tolling. But the language relied on by Granite Re says nothing about Granite Re's obligation to pay on EnviroTech's behalf, about EnviroTech's fraudulent concealment, or about equitable tolling, nor does any other provision in the bond.

Granite Re conceded at oral argument that, absent specific language precluding the application of the doctrine of fraudulent concealment, if there were no one-year limitations provision in the bond, the rule that "regardless of when a cause of action accrues, ... fraudulent concealment of that cause of action will prevent the running of the statute of limitations" would apply, and Granite Re would have had to pay the fringe benefits that EnviroTech owed when the Funds filed their claim in April 2011. *See Kopperud v. Agers,* 312 N.W.2d 443, 446 (Minn.1981) (citing *Schmucking,* 183 Minn. 37, 235 N.W. 633). Because Granite Re did not include specific language precluding equitable tolling based on fraudulent concealment in the bond, the question of whether or not the contractual limitations period may be tolled in this case turns on the general rule of equitable tolling. As we explained above, the rule may be applied to sureties to toll the limitations period when the principal fraudulently conceals a cause of action.

For all of the reasons discussed above, we hold that the one-year contractual limitations period set out in the bond may be tolled against Granite Re.[6] Therefore, we

---

**6.** By motion filed May 1, 2013, the Funds moved to strike the amicus brief of The Surety & Fidelity Association of America. Having by

remand to the district court for further proceedings consistent with this opinion.

Affirmed.

LILLEHAUG, J., took no part in the consideration or decision of this case.

order deferred our decision on the motion, we now deny it.